PEOPLE'S SAVINGS BANK OF WOONSOCKET *vs.* WILLIAM B. JAMES.

Middlesex.    November 26, 1900. — March 12, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

A false representation made with fraudulent intent by A. to B., a woman, that A., the speaker, was a man of large means and credit and had superior facilities for raising money, and that he could raise it on easier terms than B. could, and that if he had her land he could at once get a certain sum of money upon a mortgage of it, whereby B. was induced to convey to A. her land, which in consequence was sold on an execution against A., is not such a fraud as to afford a ground for equitable relief, in a bill brought by B. against the purchaser of the land at the execution sale.

HOLMES, C. J.   This is a bill to redeem from a tax sale. There is an answer and also a cross-bill by the defendant, and a demurrer to the cross-bill by the plaintiff. The demurrer was sustained, the cross-bill was dismissed, and a decree was entered for the plaintiff upon its bill. The defendant appeals. The question before us concerns only the dismissal of the cross-bill. The case intended to be made by the cross-bill is this. The plaintiff derives its title from one Melina G. Kelley through one Rice, and holds it subject to the equities, if any, of Kelley against Rice. The defendant (the plaintiff in the cross-bill) derives his title through a subsequent conveyance from Kelley, and has succeeded to her equities. We express no opinion whether in fact he has succeeded to them. *Foster* v. *Wightman,*

123 Mass. 100. *Fairfield* v. *McArthur*, 15 Gray, 526. Her equities arise out of the following facts. She was under contract to Rice and wished to pay off this and other liabilities, and to that end was intending to sell or mortgage her land, as she told Rice. Following but slightly abridging the language of the bill, Rice, wishing to get the land without giving an equivalent, fraudulently represented to her that he was a man of large means and credit, that he had superior facilities for raising money, and could raise it on easier terms than she could, and that if he had the title to her land he could at once get $12,000 upon a mortgage of it from a bank in Providence, Rhode Island, and he promised that if she would convey the land to him he would raise that amount, pay Kelley's liabilities, give the balance to her, and return to her the land subject to the mortgage. She believed him and conveyed to him the land. It is alleged that Rice knew that his representations as to existing and contingent facts were false, he being at that time insolvent, and that no effort was made by him to obtain any money on his own credit. It is also alleged that his promises were made without any reasonable expectation on his part that he would be able to perform them. He did not perform them, and afterwards went into insolvency and was discharged. The land in question was attached and was sold on execution to the plaintiff. It should be added that the land conveyed to Rice is alleged to have been worth about $17,000, but that a part of it not embraced in this bill was subject to a mortgage of $7,300, so that the security available for the proposed mortgage was less than $10,000 on the defendant's own valuation, which presumably is put as high as it will bear.

We assume that upon a general demurrer we are to consider the case evidently intended to be made, without too close a criticism of the words used. But the demurrer in this case called attention to the insufficiency of the allegations of fraud, and in view of the fact that no amendment was made it is fair to suppose that the pleader has stated the case as strongly as he could. We are of opinion that although the case comes very near the line the cross-bill does not make out a title to relief.

The cross-bill does not allege that Rice intended not to give

the stipulated consideration for the land, or not to return it when required to do so by the terms of his bargain. The words "desiring to obtain possession of said real estate without rendering any equivalent therefor" just fall short of alleging an intent not to make an attempt to carry out the terms of the understanding. They are a discrediting summary of a general state of mind, but do not allege the necessary specific intent. We may add here that it is not alleged that the sale on execution under which the plaintiff claims was in any way the intended result of Rice's acts.

The only representations alleged to have been made are that Rice, the speaker, was a man of large means and credit and had superior facilities for raising money, that he could raise it on easier terms than Kelley could, and that if he had her land he could at once get $12,000 upon a mortgage of it. These we must assume were made with knowledge of their falsity, and with fraudulent intent. But none of them in our opinion reaches the point at which equity interferes. Rice's interest was manifestly adverse to Kelley's, and the parties were at arm's length. They stood like the parties to a sale, or at least were not in confidential relations. The statement concerning the mortgage by its very terms and nature depended on the value of the security, a point on which Kelley presumably was at least as well qualified to judge as Rice, and according to the defendant's valuation it was absurd on its face. Necessarily too it was a mere prophecy as to the future, not a statement of any material present fact. The representations concerning Rice's solvency and credit raise a nicer question, but they do not change the result.

It may be that fraudulent representations as to the solvency of a third person in terms as general as those alleged would give a right of action. See *Bowen* v. *Carter*, 124 Mass. 426; *Andrews* v. *Jackson*, 168 Mass. 266. It may be that such representations as to one's own solvency knowing that he was insolvent at the moment would warrant the granting of relief. *Cincinnati Cooperage Co.* v. *Gaul*, 170 Penn. St. 545. See *Morris* v. *Talcott*, 96 N. Y. 100. It may be that they would have equal effect if they purported to sum up specific data before the speaker. *Morse* v. *Shaw*, 124 Mass. 59. So no doubt if the

statement itself was somewhat more specific. *Judd* v. *Weber*, 55 Conn. 267. See *Way* v. *Ryther*, 165 Mass. 226, 229. Possibly cases very near the line might be left to the jury, even where the import of the words used was undisputed. See *Morse* v. *Shaw*, 124 Mass. 59. For beside the distinction which has been taken between words purporting to be expressions of opinion and those which purport to be statements of fact, there is a distinction in the nature of the representations after their import is settled, and a jury might be called in as elsewhere in cases near the line.

But the representations alleged, when standing by themselves, unqualified by any further circumstance, are of such elastic meaning and so obviously may be wholly dependent upon an optimistic view of his own case, that, when they are made by one party to a bargain, the other party relies upon them at his peril. Or if another form of words be preferred, it may be said that such a statement without more is to be taken to import only an expression of opinion, and that for that reason the other party follows it at his own risk. *Lyons* v. *Briggs*, 14 R. I. 222. *Jude* v. *Woodburn*, 27 Vt. 415. *Deming* v. *Darling*, 148 Mass. 504, 505. It will be observed that it is not alleged that Rice knew that he was insolvent, and that all the allegations of fraud would be satisfied by showing that Rice made the supposed statements, and that at the time he knew that he was a man of small means, without important standing as a man of wealth.

There is no element of a fraudulent promise, that is, of an implied and fraudulent representation of intention, in the case, because, as we have said, there is no allegation that Rice made his promises with intent not to perform them. The effect of those promises, if anything, as contracts does not come into question here. We must take the cross-bill as intended for a cross-bill properly so called, and not as an anomalous proceeding under St. 1887, c. 383, § 3. The prayer for an account of what is due Rice and others, to be sure, looks in the direction of an affirmance of the transaction, treating the conveyance of the land to him as a valid security, although only a security. But the final prayer that the plaintiff be debarred from having or claiming any title or right in the premises adverse to the defendant sounds in rescission, and asks the relief that naturally

would be sought in a cross-bill intended to establish that the plaintiff in the original bill had no right to redeem. We assume that to have been the object of the cross-bill, and are of opinion that the demurrer to it properly was sustained.

*Decree affirmed.*

*G. V. Phipps & J. A. Curtin,* for the defendant.
*S. H. Dudley & H. Dudley,* for the plaintiff.