## John S. Bradley *vs.* Herbert W. Oviatt.

Third Judicial District, New Haven, June Term, 1912.
Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

The essential elements required to sustain an action for deceit and false representation are that the representation was made as a statement of fact; that it was untrue, and known to be untrue by the party making it; that it was made for the purpose of inducing the other party to act upon it; and that the party to whom the representation was made was in fact induced thereby to act to his injury. The absence of any one of these statements is fatal to a recovery.

The defendant, a real-estate broker, negotiating with the plaintiff as a prospective purchaser for the sale of real estate, represented to him that the owner would not take less than a certain sum. The plaintiff purchased at the price named, and thereupon the defendant represented to his principal that he had sold at a much lower price, and retained the difference for his own use. It was apparent from the facts and circumstances appearing in the record that the defendant, at the time he made the representation as to the lowest price, could not have known that it was untrue. *Held:*—

1. That if the defendant's retention of a part of the purchase price was wrongful, only the owner was harmed thereby.

2. That in the absence of knowledge on the part of the defendant that his statement as to the owner's lowest price was untrue, such statement was entirely speculative and conjectural, and could not be made the basis of an action of deceit.

The law does not fasten responsibility upon one for an expression of opinion as to matters which in their nature are uncertain and contingent.

The Superior Court found that the plaintiff did not rely upon the statements of the defendant in making the purchase of this real estate, but "relied upon his own judgment as to the value of the land and believed it was worth what he paid, basing his judgment on such investigations as he cared to make." *Held* that, under such circumstances, the defendant's alleged deceptions never influenced the plaintiff to purchase.

Argued June 6th—decided July 26th, 1912.

Action against a real-estate broker for deceit in the sale of land, brought to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judg-

ment rendered for the defendant, and appeal by the plaintiff. *No error.*

*Henry G. Newton* and *Ward Church*, for the appellant (plaintiff).

*Carl A. Mears*, for the appellee (defendant).

RORABACK, J. The complaint describes two distinct causes of action in two counts. The first count alleges that the defendant made false representations to the plaintiff in connection with the sale of land in West Haven, hereinafter called the "first piece." The second count sets forth an alleged cause of action of a similar character, founded upon the sale of another tract of land in West Haven, designated as the "second piece." These sales were made on different dates.

The facts of the case, as far as necessary to present the questions involved, are as follows: In September, 1909, the plaintiff, a retired business man, was well acquainted with the defendant and had confidence in his statements. The defendant was a real-estate broker in the city of New Haven. This land, which was owned by the Union Savings Bank of Danbury, was placed with the defendant for sale "at the best price obtainable." The ordinary commission for the sale of property of this kind was five per cent. The plaintiff made a careful examination of the property, and was told by the defendant that $5,000 was the price of the first piece. Later the plaintiff asked the defendant if $5,000 was the lowest price for the first piece, and the defendant said it was. At that time the lowest price had not been fixed by the owner. The fair market value of the first piece at this time was about $4,500. It was in fact Oviatt's opinion that he could get $5,000 for the property. The broker then wired the bank that the first

piece had been sold for $4,000 net to the bank. The bank ratified the sale, and it was consummated on these terms. Oviatt retained $1,000 as his commission in connection with this sale. In the meantime, the plaintiff was considering the purchase of the second piece at $7,000. The defendant, without communicating with the bank, informed the plaintiff · that the lowest price for this property was $7,000. The plaintiff then offered $7,000 for the second piece, and the defendant accepted the offer. The broker then informed the bank that he had sold the second piece for $5,750 net. The bank accepted the offer, and the defendant retained for his own use $1,250 on account of the sale of the second piece.

The market value of the second piece in 1909 was about $6,000. The plaintiff first learned the amount the defendant had personally received out of these sales in the fall of 1911. The bank at this time first ascertained the facts as to these transactions. Oviatt believed that the plaintiff would pay $7,000 for the second piece, and did not ask the bank to state its lowest price, but stated to Bradley that $7,000 was the bank's lowest price. "Mr. Bradley had ample time and opportunity to examine the premises and did examine them thoroughly, and he had ample time and opportunity to examine as to their market value. He was an experienced and successful business man, and accustomed to dealing in real estate with a view to reselling it, and owned some real estate in West Haven, and he relied upon his own judgment as to the value of the land and believed it was worth what he paid, basing his judgment on such investigation as he cared to make."

The alleged false representations set forth in the first count upon which the plaintiff relies were as follows: "The representations that a cash offer of $4,750 had

been made for said land and that there was a ready sale for said land at an advance over $5,000, and that the lowest price of said The Union Savings Bank of Danbury for said land was $5,000, were each of them untrue, and were known to the defendant to be untrue, were made as statements of fact, and were made with intent to deceive plaintiff and to induce him to purchase said land at the price of $5,000; and plaintiff was thereby induced to act to his injury, as hereinafter appears."

In the second count the plaintiff in part based his cause of action upon the following allegations: "Said representations that the lowest price at which said The Union Savings Bank of Danbury would sell said land was $7,000, and that there was a ready sale of said land at an advance over $7,000, were each of them untrue, and were known to the defendant to be untrue, were made as statements of fact, and were made with intent to deceive plaintiff and to induce him to purchase said property at the price of $7,000; and plaintiff was thereby induced to act to his injury."

None of the specifications of fraud, as set forth in the complaint, are found to be true, except the one relating to the lowest market price that the bank would take for its property.

Upon the facts found, the trial court held that the plaintiff had no cause of action against the defendant. The plaintiff appeals. There is but one question fairly presented by the appeal, which relates to the representations set forth in both counts of the complaint as to the lowest prices which the bank would take for the two pieces of land.

To justify an allegation of fraud in making these statements, it was necessary for the plaintiff to show that the defendant had knowledge at the time that these statements were made that they were untrue. From

the facts and circumstances appearing in the record, it is apparent that such knowledge was impossible. The defendant did not know, at the time the representations were made, the ultimatum of the bank as to the "lowest prices" it would take. This could not be ascertained until further investigation. Until then, statements made by the defendant would have been entirely speculative and conjectural. His instructions were to sell the property "at the best price obtainable." As an agent of the bank, it was his duty to get all that he could for the property. If, by subsequent developments, it appeared that he obtained the best prices obtainable, and then deceived the bank and wrongfully retained a portion of the price, this is a matter which concerned the bank, and not the plaintiff.

It is plain that this property would not have been worth any more if the alleged representations of the defendant as to the lowest price which the bank would take for its property were true. The representations can only be taken as expressions of the vendor's estimate of the value of its property. The law does not fasten responsibility upon one for expression of opinion as to matters which, in their nature, are contingent and uncertain. *People's Savings Bank* v. *James,* 178 Mass. 322, 59 N. E. 807; *Randall* v. *Farnum,* 52 Vt. 539, 542.

The essential elements required to sustain an action for deceit and false representation are that the representation was made as a statement of fact; that it was untrue, and known to be untrue by the party making it; that it was made for the purpose of inducing the other party to act upon it; and that the party to whom the representation was made was in fact induced thereby to act to his injury. All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery. *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 Atl. 980.

The Superior Court, after finding specifically as to the various facts surrounding these sales, in substance finds that the plaintiff did not rely upon the statements of the defendant in making the purchase of this real estate, but "relied upon his own judgment as to the value of the land and believed it was worth what he paid, basing his judgment on such investigations as he cared to make." Under such circumstances, the defendant's alleged deceptions never influenced the plaintiff to purchase.

There is no error.

In this opinion the other judges concurred.