## DOMINIC MATURO ET AL. *v.* EDWARD J. GERARD ET AL.
### (12291)

PETERS, C. J., HEALEY, SHEA, DANNEHY and SANTANIELLO, Js.

Argued February 7—decision released July 2, 1985

*James M. S. Ullman,* for the appellants (defendants).

*Herbert Watstein,* with whom were *William Wynne* and, on the brief, *Julia T. Bradley,* for the appellees (plaintiffs).

SANTANIELLO, J. This case is an action brought in two counts (1) to recover monies paid by the plaintiffs to the named defendant, Edward Gerard, obtained by him through fraud and misrepresentation, and (2) to set aside as fraudulent a conveyance of the family real estate by the named defendant to the codefendant, Helen Gerard, his wife. From a judgment granting relief to all the plaintiffs but one[1] on both counts rendered by *Hon. Roman J. Lexton,* state trial referee, the defendants have appealed.

The trial court could reasonably have found the following facts, which are set forth in the memorandum of decision. The defendant, Edward J. Gerard,[2] became employed in 1971 by two partners, Dolce and Rhinehart (hereinafter referred to as Dolce), as a salesman and messenger. His job was to collect delinquent accounts. About three months later, he became a full-time salesman. He was instructed to persuade people to invest money in what Dolce represented to be his present and contemplated business enterprises. The representation was that if each participant would invest a given amount in a lump sum, the return, payable in installments over time, would yield a substantial profit. The defendant received a salary plus a commission on every dollar invested in the Dolce enterprises. Dolce instructed him on how to conduct himself and what to say, and told him always specifically to represent himself as an agent for Dolce.

At this time, Dolce and Rhinehart owned and were operating two small food co-ops and were renting a small warehouse in connection with the merchandise

---

[1] The plaintiffs are: Dominic and Frances Maturo, Donald and Adelie Volz, Leo and Claire Bisaillon, Joseph and Henrietta Lemieux, Ronald Apt, and Harold and Madeline Fish. The court found there was no evidence linking the defendant with the plaintiff, Frances Maturo, and thus, found for the defendants on her claims.

[2] Unless otherwise directed, the defendant refers to Edward.

for the co-ops. Dolce claimed ownership of or contemplated ownership in warehouses, a golf course, a fast food franchise, several mini plazas, a car wash, a carload of antifreeze bought for a "financial killing," and an advertising enterprise. The defendant was instructed to use these various holdings in his sales pitch and he did make use of them while inducing individuals to invest money in Dolce's "enterprises" which, in fact, aside from the co-ops and warehouse, did not exist. He made said claims to potential investors recklessly and on an unreasonable and groundless belief in their truth. At all times, the defendant represented that he was acting only as an agent for Dolce.

In spite of the aforementioned factors, the defendant made unqualified endorsements of Dolce and the phantom investment prospects, telling the plaintiffs that Dolce was a fine, honest man who offered these investment opportunities in order to help the working people. He further represented that Dolce was a genius with great goals, that his deals would pay much higher interest than a bank, and that the investments were stable and perfectly safe. Inducements were paid to investors for procuring new prospects and the defendant continually encouraged the plaintiffs to reinvest, always assuring them that things were going well.

Subsequently, in July, 1974, the entire scheme showed signs of failure. Dolce attempted to placate his investors by issuing dividend checks which were postdated to November 1, 1974. The Dolce checks given to the investors in July, 1974, were dishonored in November, 1974, and Dolce declared bankruptcy. The defendant then gratuitously transferred his interest in the family real estate to his wife.

The trial court rendered judgment in favor of all plaintiffs except Frances Maturo to recover money damages as against the defendant Edward while hold-

ing for the defendant Helen on the first count. The court further rendered judgment in favor of all the plaintiffs except Frances Maturo on the second count, and set aside the conveyance of the real estate by the defendant to his wife, declaring it null and void and subject to attachments effected therein.

The defendants raise three claims on appeal, alleging that the trial court erred in finding (1) that the defendant Edward Gerard was guilty of fraudulent misrepresentation, (2) that the plaintiffs justifiably relied upon his representation, and (3) that the defendant's transfer of real estate to his wife was a fraudulent conveyance. We find no error.

I

The defendants' first claim is that the trial court erred in finding the defendant Edward guilty of fraudulent misrepresentation since he was acting for a disclosed principal and was personally unaware of any fraud.

"The essential elements of an action in fraud, as we have repeatedly held, are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69 (1970); *Clark* v. *Haggard,* 141 Conn. 668, [673,] 109 A.2d 358 (1954); *Helming* v. *Kashak,* 122 Conn. 641, 642, 191 A. 525 (1937); *Bradley* v. *Oviatt,* 86 Conn. 63, 67, 84 A. 321 (1912); *Barnes* v. *Starr,* 64 Conn. 136, 150, 28 A. 980 (1894)." *Miller* v. *Appleby,* 183 Conn. 51, 54–55, 438 A.2d 811 (1981).

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." *Hathaway* v. *Bornmann,* 137 Conn. 322, 324, 77 A.2d

91 (1950). The trier of facts is the judge of the credibility of the testimony and of the weight to be accorded it. See *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 547, 391 A.2d 170 (1978); see, e.g., *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 555, 364 A.2d 217 (1975); *Yale University* v. *New Haven,* 169 Conn. 454, 463, 363 A.2d 1108 (1975). The trial court found that the defendant, acting as agent for Dolce, represented to the plaintiffs that they were, in fact, investing in a number of profitable enterprises which were enumerated and specifically identified. Most of the enumerated business ventures did not exist. The defendant took no action to identify their authenticity and made claims to potential investors recklessly and on an unreasonable and groundless belief in their truth. He made representations with the purpose of inducing the plaintiffs to act upon them. "We have had occasion to point out that where a defendant has special means of knowledge, and a plaintiff can under the circumstances attribute to the former accurate knowledge of what is represented, the plaintiff need not show the actual knowledge of the falsity of the representation. See *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 346–47, 232 A.2d 307 (1967); *Warman* v. *Delaney,* 148 Conn. 469, 172 A.2d 188 (1961); see also, 37 Am. Jur. 2d, Fraud and Deceit § 201." *Miller* v. *Appleby,* supra, 56. In considering the defendant's personal liability for his statements, it matters not that these representations were made by the defendant in the course of his agency relationship so long as the defendant can be said to have made them in circumstances under which he was chargeable with knowledge of their falsity. "Where . . . an agent . . . commits or participates in the commission of a tort, whether or not he acts on behalf of his principal . . . he is liable to third persons injured thereby." *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 404, 363 A.2d 160 (1975). Under the circumstances of this

case, the trial court could justifiably find that the defendant was guilty of fraudulent misrepresentation despite his claim of ignorance.

## II

The defendants' second claim is that the court erred in finding that the plaintiffs justifiably relied upon misrepresentations of the defendant Edward. They claim that the plaintiffs knew of the speculative nature of the ventures and should have made their own investigation. The plaintiffs were simple working people with limited experience in financial matters. They were not knowledgeable in business transactions. The defendant offered inducements and held out the fact that he had even invested his own personal monies. The plaintiffs were led down the primrose path because of their belief in the truth and veracity of the defendant. He led them like the "Pied Piper" to the tune of his enthusiastic salesmanship into a venture of excitement and profit. As the trial court correctly found, the fact that the plaintiffs were not on equal footing with the defendant, and did not have equal access to the information about the scheme allowed them to rely on the defendant's representations. *Pacelli Bros. Transportation, Inc.* v. *Pacelli,* 189 Conn. 401, 409, 456 A.2d 325 (1983).

## III

The defendants' third claim is that the trial court erred in setting aside the conveyance of real estate from the defendant to his wife as being fraudulent. "A person to whom the grantor was indebted and who wishes to avoid the conveyance has the burden of showing either (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligation *or* (2) that the conveyance was made with a fraudulent intent in which the grantee participated. *Zapolsky* v. *Sacks,* 191 Conn. 194, 200,

464 A.2d 30 (1983); *Denison Development Co.* v. *Gunther,* 189 Conn. 333, 335, 455 A.2d 1340 (1983); *Molitor* v. *Molitor,* 184 Conn. 530, 535–36, 440 A.2d 215 (1981). Since the plaintiff[s] can prevail if [they have] met [their] burden on either one of these tests, we need not consider them both." (Emphasis added.) *Bizzoco* v. *Chinitz,* 193 Conn. 304, 312, 476 A.2d 572 (1984). We conclude that there was sufficient evidence to support the trial court's finding that "the conveyance was made with a fraudulent intent in which the grantee participated."

The underlying facts are clear. The relationship between Edward and Helen was very close and harmonious. She frequently accompanied him when he promoted the pyramid scheme. She was aware that Edward had invested marital assets in the scheme and that the investment was in jeopardy during the summer of 1974. She further knew that postdated checks had been issued to investors and that Dolce was bankrupt. Knowing of Dolce's bankruptcy and realizing that he was facing potential lawsuits from investors, Edward took steps to protect himself and the family's joint assets. First, he destroyed all of his business papers relating to the Dolce operation. Helen knew about this action. Second, with Helen's knowledge, he consulted with a lawyer about transferring his interest in the family residence to Helen to protect himself from potential claims. A short time later, a transfer was made by yet another lawyer to Helen, for which there was no consideration paid. The trial court properly concluded: "No credible explanation was advanced by Edward or Helen Gerard, or by anyone, as to why a transfer of his interest in the realty in issue was made at that particular time when he was faced with potential claims against him, without consideration of any kind." The court further found that Helen was in full possession of her faculties at all times in her associa-

tion with Edward and that "she saw what there was to be seen, heard what there was to be heard, sensed what there was to be sensed, and talked with her husband about matters which were happening around her and with respect to finances in which she had an interest and consequences which would affect her directly if claims were filed against her." On the basis of the facts found, the court concluded that "the transfer of Gerard's interest in the property in issue was fraudulent in that it was made to avoid the potential claims of those who were induced by Gerard to invest in the Dolce-Rhinehart fraudulent business scheme, and that the grantee, Helen Gerard, had full knowledge that said transfer was for that purpose." The finding of fraudulent intent in which Helen Gerard participated was thus amply supported by the evidence.

There is no error.

In this opinion the other judges concurred.