[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding arises out of an action to collect a real estate commission, and a counter claim seeking damages as a result of claimed misrepresentations made by a real estate agent during the negotiations leading to the sale of real estate.
The following factual determinations are made from the evidence: The plaintiff, Elmer R. Craw Real Estate of Trumbull, Inc. (Craw) is a real estate broker licensed to do business in the State of Connecticut. The defendant Edward J. Kennedy (Kennedy) was the owner of real estate located at 319 Hillside Avenue, Naugatuck, Connecticut. The defendant. James F. Thurston, III Trustee (Thurston) was the owner of two pieces of real estate located at 321 Hillside Avenue and 321 Hillside Avenue Lot B, Naugatuck, Connecticut.
On June 14, 1988, Kennedy and Craw signed a non exclusive open listing agreement which allowed Craw to list the property until December 14, 1988 at a sales price of $167,900 with a four (4%) percent real estate commission in the event the property was sold. On a map entitled "Map Showing Property owned by James Thurston, III and Edward Kennedy 319 and 321 Hillside Avenue, Naugatuck, Connecticut, Scale 1" = 20' — June 6, 1988" (Map) the Kennedy property was marked as "A" and contained 7,535 square feet. Craw and its employees had a copy of this map when they showed the property to prospective purchasers.
On July 13, 1988, Thurston and Craw signed non exclusive open listing agreements which allowed Craw to list the properties until August 13, 1988. The agreement as it pertained to Lot "B" on said CT Page 3531 map called for a sales price of $15,700 with a ten (10%) percent real estate commission in the event the property was sold. Lot "B" was an undeveloped piece of property. The agent as it pertained to Lot "C" on said map called a sales price of $129,900 with a real estate commission of five (5%) percent in the event the property was sold. Said agreement had a termination date of August 13, 1988.
There came a time when Craw showed the Kennedy property to John McDougall, Jr. and Michele J. McDougall (The McDougalls). Peter Angeline (Angeline) was the realtor employed by Craw who showed the property to the McDougalls. At the time he showed the property, the McDougalls were given the map and they viewed the map.
While at the property, Angeline and the McDougalls attempted to locate the boundary lines and any stakes that might show where the lines might be. At this time, Angeline pointed out points on the property where he thought the boundary lines might be. Angeline was not a land surveyor and he had no expertise in determining boundary lines.
On July 18, 1988, Kennedy and the McDougalls executed a sales agreement wherein it called for a sales price of $160,000. The agreement stated that the premises contained 7,535 square feet as shown on the map. A closing was to take place on or before September 9, 1988. In the agreement the parties agreed that Craw was the agent who negotiated the sale and was entitled to the commission.
At a time prior to the closing date, the McDougalls discovered that the boundary lines were not where they thought that the lines were; and they thought that they were entitled to more land. Thereafter the McDougalls commenced legal proceedings to enforce the property size that they thought that they were entitled to under the terms of the sales agreement.
In a complaint dated September 19, 1988, the McDougalls sued Kennedy, Thurston and Craw. As to Kennedy, the complaint requested that Kennedy convey the size of the property as called for in the agreement. As to Craw, the complaint alleged that Craw made false representations as to the size of the property and that. the McDougalls relied on these false representations when they signed the sales agreement. As to Thurston, the complaint alleged that he accepted a portion of the property from Kennedy which property the McDougalls claimed was part of the property to be purchased.
Thereafter in order to settle the above mentioned litigation, in November, 1988 the parties entered into a settlement agreement CT Page 3532 whereby Kennedy and Thurston would convey to the McDougalls 5,560.5 square feet of the westerly portion of Lot "B" in addition to conveying the entirety of Lot "A" as shown on said map. Further, the agreement stated that Craw was the broker who brought about the sale. On December 6, 1988, the property was conveyed to the McDougalls for the sales agreement price of $160,000; but no real estate commission was paid to Craw at the time of the closing.
Subsequently, Craw instituted the present action to collect. the commission in the amount of Six Thousand Four Hundred and 00/100 ($6,400.00) Dollars. In response thereto, Kennedy and Thurston filed a special defense and counterclaim. The special defense claimed that there was no written agreement in accordance with Connecticut General Statutes Section 20-325a(b) Actions to Recover Commissions arising out of real estate transactions. The counterclaim seeks damages of $17,330.65 which represents the following expenses: 1) Purchase of the additional parcel consisting of 5,560.5 square feet; 2) expenses in defending the McDougalls's lawsuit; 3) carrying charges due to the delay in the closing; 4) expenses in connection with defending the instant lawsuit.
The thrust of the counterclaim is that Craw made representations as to the size of the subject property; and that the McDougalls relied upon these representations. Further, that at the time that these representations were made, Craw knew or should have known that they were false; and that these representations were made to induce the McDougalls to purchase the property.
 It is well settled in this state that a broker is entitled to a commission when his efforts have resulted in procuring a customer who is ready, able and willing to buy on terms and conditions prescribed or agreed to by the seller. Martino v. Palladino, 143 Conn. 547, 548, 123 A.2d 872; Thomas F. Rogers, Inc. v. Hochberg, 143 Conn. 22, 118 A.2d 910; Dyas v. Akston, 137 Conn. 311, 77 A.2d 79; Roche v. Curtin, 131 Conn. 66, 69, 37 A.2d 805; Wright v. Reid, 111 Conn. 141, 146, 149 A. 239; Notkins v. Pashalinski, 83 Conn. 458, 460, 76 A. 1104.
Walsh v. Turlich, 164 Conn. 71, 80 (1972).
 ". . . that if, `without any fraud, concealment, or other improper practice on the part CT Page 3533 of the broker, the principal accepts the person presented, either upon the terms previously proposed or upon modified terms then agreed upon, and enters into a binding and enforceable contract with him for the purchase of the property, the commission is fully earned.'"
Walsh v. Turlich, supra 81.
Ordinarily, all that a broker must do to be entitled to a commission is to have presented a party who ultimately enters into a binding and enforceable contract with the broker's principal. In the instant matter there is no dispute that Craw produced the McDougalls to Kennedy; and that they ultimately purchased the subject property. Under this factual scenario, Craw would be entitled to a commission. However Kennedy asserts that because of the claimed false misrepresentations made by Craw to the McDougalls about the boundary lines, Craw acted improperly and is not entitled to the commission; and further Craw should reimburse Kennedy for expenses incurred in settling the disputed boundary lines.
 The essential elements of an action in fraud are that a false representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to action it; and that he did so act to his injury. Helming v. Kashak, 122 Conn. 641, 642, 191 A. 525; Macri v. Torello, 105 Conn. 631, 633, 136 A. 479; Bradley v. Oviatt, 86 Conn. 63, 67, 84 A. 321.
Palva v. Vanech Heights Construction Co., 159 Conn. 512, 515
(1970). The only conclusion that can be reached is that the defendants have failed in their burden of proof in establishing that Angeline made any statement of fact that was untrue upon which the McDougalls relied upon in signing the sales agreement. At best, Angeline made a guess or opinion as to where the boundary lines might be. The McDougalls had seen the map and knew what the square foot measurement of the property was. There is no possibility that the McDougalls relied on anything that Angeline said as to where the boundary lines were in signing the sales agreement.
In claims for negligent misrepresentation, Kennedy had the burden of proof in establishing that when Angeline gave his opinion as to where the boundary lines were, he knew or should CT Page 3534 have known that his statements were incorrect. Johnson v. Healy,176 Conn. 97 103 (103). There is no evidence that would sustain a conclusion that Angeline was negligent when he gave his opinion as to where the boundary lines might be. Thus there is no basis upon which Craw could be legally responsible for any of the damages claimed by Kennedy.
A brief comment will be made as to the special defense that Craw cannot collect its commission in that Connecticut General Statutes Section 20-325a(b) was not complied with in that there was no valid listing agreement. This claim is without merit. There was a listing agreement which was executed in compliance with the statute; and therefore it could be used as a basis for collecting a real estate commission. It should be mentioned in passing that only Kennedy signed the listing agreement and it was his property that was listed in the agreement. Thus, Thurston cannot be held legally responsible for any commission that may be legally due Craw.
Accordingly, on the complaint, Judgment may enter in favor of Craw as against Kennedy in the sum of Six Thousand Four Hundred and 00/100 ($6400) Dollars and for Thurston as against Craw. Accordingly, on the counter claim, judgment may enter in favor of Craw as against Kennedy and Thurston. Costs are assessed.
BYRNE, J.