[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Sam Apgar, commenced this action in two counts against the defendants, MBS Business Systems, Inc. f/k/a Moore Business Systems, Inc., and Harry Moore. The defendants filed ten Special Defenses to the Revised Complaint. Based on the evidence presented at trial, the court finds in favor of the plaintiff on the First Count of the Revised Complaint, and in CT Page 8988 favor of the defendant, Harry Moore, on the Second Count.
I. Facts
This action arises out of the following facts:
A. Formation.
In 1988, the plaintiff, Sam Apgar, was employed as a business equipment dealer in Augusta, Maine. At that time and at all relevant times, the defendant Harry Moore was the President of the defendant, MBS Business Systems, Inc. (hereinafter "MBS"), a company in the business of selling and servicing office equipment, specifically copiers, typewriters, facsimiles, whiteboards and other miscellaneous equipment, with headquarters in Enfield, Connecticut.
In the summer of 1988, Mr. Apgar and Mr. Moore began discussing the possibility of a future for Mr. Apgar at MBS. The discussions continued through the fall and winter. Mr. Moore informed Mr. Apgar of his objectives for the company by letter and in a meeting at Mr. Moore's home in Vermont in December of 1988. Further letters sent to Mr. Apgar in January of 1989 detailed Mr. Moore's plan for a new organizational structure for the company and stated revenue goals with specificity. Mr. Apgar and Mr. Moore negotiated terms of employment including form and amount of salary and use of a leased car.
At a meeting on February 22, 1989 in a restaurant in Auburn, Massachusetts, an agreement was reached between the parties (hereinafter the "Auburn agreement"). Mr. Apgar was to be placed in charge of the Service Department, the Supply Department and the New Equipment Sales Department for a guaranteed period of three years. Annual compensation was to be guaranteed for those three years and set at $250,000, $150,000 of which was to be characterized as "salary" and paid with the company payroll. The remaining $100,000 was to be characterized as a "guaranteed bonus" and paid in the first year on a monthly basis with salary. In the second year, the bonus component was to be paid quarterly. In addition, the possibility of earning additional bonuses in years two and three was created. Mr. Apgar was also to receive the use of a car and to be given health benefits. The terms of the agreement were written by Mr. Moore on lined paper. Mr. Moore took the paper with him at the CT Page 8989 conclusion of the meeting.
Mr. Apgar reported for work on April 3, 1989. As he required a letter of employment verification for a residential mortgage on a home in Connecticut, Mr. Apgar requested that Mr. Moore provide him with a copy of his employment agreement. This was accomplished with a letter signed by Mr. Moore reflecting the Auburn agreement and faxed to People's Bank on April 5, 1990 (hereinafter the "People's Bank letter").
B. Performance.
Mr. Apgar worked for MBS from April 3, 1989 to August 1, 1990 when his employment was terminated by Mr. Moore. Up to the summer of 1990, Mr. Apgar's salary and benefits were paid out according to the Auburn agreement. At no point did Mr. Apgar meet all of the revenue goals set by Mr. Moore during the negotiations.
During the period of his employ, Mr. Apgar was given two formal performance reviews by Mr. Moore, neither of which contained any warning of an incipient demotion or pay cut. In a memorandum to Mr. Apgar dated September 21, 1989, Mr. Moore stated in the written performance appraisal that: "I want to make it very clear to you that I have total confidence in your ability to get the job done." At a review in October of 1989, for the period of April to September of 1989, Mr. Moore identified in writing areas in which Mr. Apgar could improve his performance and exhorted him to devote his immediate attention to improving sales and rental figures, but concluded by stating that: "I have total confidence in your ability to get the job done." In a December 13, 1989 letter, Mr. Moore thanked Mr. Apgar for all of his hard work.
In the spring of 1990, Mr. Moore retained the business consulting firm of Don Aux Associates for the purpose of getting advice about increasing revenues and decreasing expenses. Among the suggestions made by Don Aux Associates was the institution of quarterly performance goals in job descriptions for the purpose of employee motivation.
At Mr. Apgar's second review in March of 1990, the revenue goals were, for the first time, referred to both as requirements and as goals. In a comment to the Management Evaluation Section of the written review, Mr. Moore stated: "Overall, you clearly CT Page 8990 have the knowledge. However, we have not been achieving the required results. This identifies to me that it as a matter of skills." Despite the growing tone of dissatisfaction, Mr. Apgar's continued employment at the original salary was not conditioned on the achievement of the targeted revenues.
C. Breach.
Until the spring and summer of 1990, the revenue goals were described by Mr. Moore as the primary focus of, but not a necessary condition of, the continuation of Mr. Apgar's position and salary. Up to that time, achievement of the goals was expected, desired, and of paramount importance, but the goals were still aspirations and not conditions of employment. During the summer of 1990, Mr. Moore advised Mr. Apgar, for the first time, that achieving the targeted revenue was a requirement of continued employment at the existing salary and that, were it not reached, Mr. Apgar would be demoted and required to take a cut in pay. The relationship between Mr. Apgar and Mr. Moore deteriorated, and Mr. Moore terminated Mr. Apgar's employ on August 1, 1990.
After his termination, Mr. Apgar moved back to Maine and started his own business. After he incorporated Apgar Imaging Systems, signed a lease, committed to an employee, and took out loans, Mr. Apgar received a job offer from a former employer. Mr. Apgar turned the offer down.
The Court finds that the express employment contract which existed between the plaintiff and the defendant, MBS, was breached by MBS when it terminated the plaintiff's employ effective August 1, 1990.
D. Negligent Misrepresentation.
Connecticut has long recognized a cause of action in negligent misrepresentation, the governing principles of which:
 . . .are set forth. . .in 552 of the Restatement Second of Torts (1979): "One who, in the course of his business, profession or employment. . .supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails their justifiable reliance upon the information, if CT Page 8991 he fails to exercise reasonable care or competence in obtaining or communicating the information." (further cites omitted).
D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 217-218 (1987). The elements to be proven have been refined:
 For purposes of a cause of action for negligent misrepresentation. . .the plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information.
D'Ulisse-Cupo, at 218, and "even an innocent misrepresentation of fact `may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.' Richard v. A. Waldman Sons, Inc., 155 Conn. 343, 346,232 A.2d 307 (1967). (further cites omitted). D'Ulisse-Cupo, at 217.
The plaintiff has argued that the contract terms detailed to him by defendant Harry Moore were false and that Mr. Moore knew or should have known that they were false and still used the statements to induce Mr. Apgar's eventual reliance and damages. As the Court has found that the statements did indeed form an enforceable contract, the plaintiff's argument that the statements were false must fail. As false statements are an essential element of a cause of action in negligent misrepresentations, the Court finds for the defendant on the Second Count of the Revised Complaint.
II. Damages
The plaintiff is "entitled to recover the full value of what [he] had lost as a consequence of the breach of contract." West Haven Sound Development Corporation v. West Haven,201 Conn. 305, 328 (1986), within the bounds set by a "significant limitation on the recovery of damages for breach of contract," Id., 332,:
 "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made." 3 Restatement (Second) of Contracts, 351 (1); see West Haven Sound CT Page 8992 Development Corporation v. West Haven, 201 Conn. 305, 319-320, 514 A.2d 734 (1986).
Saporoso v. Aetna Life Casualty Co., 221 Conn. 356, 370
(1992). It is a long-standing principle that:
 Determination of damages necessarily contemplates a finding that the breach was the cause of the damages claimed. "It is hornbook law that to be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach. Such causal relation must be more than surmise or conjecture, inasmuch as a trier is concerned not with possibilities but with probabilities. Where. . .the damages claimed are remote from the breach complained of and the causal connection is wholly conjectural, there can be no recovery." Calig v. Schrank, 179 Conn. 283, 286, 426 A.2d 274 (11976); see also J. Clamari J. Perillo, Contracts (1987) 14.4, pp. 591-92; D. Dobbs, Remedies (1973) 12.3, pp. 798-803; 3 Restatement (Second), Contracts 346, 347.
West Haven Sound Development Corporation v. West Haven,207 Conn. 308, 14-15 (1988).
The plaintiff offered evidence to support his claim for damages in the amount of $567,007.63, computed as follows:
20 months of compensation $ 416,666.00
 18-1/2 months of cost of health care coverage 7,280.30
 19 months of the loan of a company car 26,701.33
 Loss of equity in -home bought in reliance on the contract 110,000.00
 Points paid and lost in closing on home bought in reliance on the contract $ 6,360.00 ____________ CT Page 8993 $ 567,007.63
The Court finds, based on the evidence produced, that the plaintiff is entitled to damages for loss of compensation, health care coverage, and loan of a company car, all of which amounts to $450,647.63. The plaintiff has not shown that the loss of equity and the points paid were caused by the breach and cannot recover those items.
III. Special Defenses
The defendants have plead ten Special Defenses. In doing so, they have assumed the burden of proof on each and every issue raised in the Special Defenses:
 It is basic law that a party who alleges the affirmative of an issue, albeit gratuitously, will be held to have assumed the buren of proof with respect to that issue. [Citations omitted].
Pawlinski v. Allstate Ins. Co., 165 1, 9 (1973). As the defendants have not sustained their burden, the Court finds in favor of the plaintiff on the first Eight Special Defenses. The Ninth and Tenth Special Defenses need not be addressed as they are directed to the Second Count of the Revised Complaint on which the Court has found in favor of the defendant, Moore.
A. Statute of Frauds.
The defendants allege in the First Special Defense that there is no writing within the meaning of the Statute of Frauds and, thus, the contract is unenforceable. The Statute of Frauds provides that:
 (a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged:. . . .(5) upon any agreement that is not to be performed within one year from the making thereof. . .
Conn. Gen. Stat. 52-550 (emphasis added). As the People's Bank letter satisfies the requirement of a memorandum of the agreement, the Statute of Frauds does not render the contract CT Page 8994 unenforceable.
The Restatement (Second) of Contracts sets forth the "General Requisites of a Memorandum":
 Unless additional requirements are prescribed by the particular statute, a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged which (a) reasonably identifies the subject matter of the contract, (b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and (c) states with reasonable certainty the essential terms of the unperformed promises in the contract.
[Restatement (Second), Contracts 207 (Tentative Draft 1973)] Lynch v. Davis, 181 Conn. 434, 439 n. 4 (1980). The Court in Lynch amplified these requirements:
 Our statute does not require that the memorandum of the contract be the contract itself [citation omitted]: instead, it is sufficient if the memorandum, with reasonable certainty, furnishes reliable evidence that the parties have come to a complete agreement.
Lynch, at 438-439.
The People's Bank letter sets forth the duration of the contract and the compensation and benefits provided for the plaintiff's promise to work at MBS for three years. While all the terms of a contract of employment were not recited therein, the People's Bank letter establishes the subject matter of the contract (employment), the parties, the consideration, and is signed by the party to be charged. The Court finds that it is a sufficient memorandum to bring the contract outside of the Statute of Frauds and, accordingly, finds for the plaintiff on the First Special Defense.
B. Plaintiff's Breach.
The defendants allege in the Second Special Defense that plaintiff materially breached the contract and that such breach excused their performance. The alleged breach is not CT Page 8995 specifically identified, but clearly revolves around the performance with respect to the revenue goals, As the Court has found that the achievement of those goals was not a condition of the contract, it finds for the plaintiff on the Second Special Defense.
C. Imprecise Contract.
The Defendants allege in the Third Special defense that the contract between the parties is "too imprecise, indefinite and conditional to be enforced by this court." The People's Bank letter contains the terms of the contract however, and those terms are neither imprecise nor indefinite. Accordingly, the Court finds in favor of the plaintiff on the Third Special Defense.
D. Fraud in the Factum, People's Bank Letter; and
E. Fraud in the Inducement, People's Bank Letter.
The defendants argue in their Fourth and Fifth Special Defenses that the People's Bank letter should not be relied upon by this Court because, they assert, People's Bank did not require the letter as per the alleged statements of the plaintiff. A long line of Connecticut case law sets out the requirements for a successful claim of fraud:
 "The essential elements of an action in fraud, as we have repeatedly held, are: (1) that a false representation was made as to a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. Paiva v. Vanech Heights Construction Co., 159 Conn. 512, 515, 271 A.2d 69 (1970); Clark v. Haggard, 141 Conn. 668, [673,] 109 A.2d 353 (1954); Helming v. Kashak, 122 Conn. 641, 642, 191 A. 525 (1937); Bradley v. Oviatt, 86 Conn. 63, 67, 84 A. 321 (1912); Barnes v. Starr, 64 Conn. 136, 150, 28 A. 980
(1984)." Miller v. Appleby, 183 Conn. 51, 54-55, 483 A.2d 811 (1981).
Maturo v. Gerard, 196 Conn. 584, 587 (1985).
CT Page 8996 The defendants failed to offer credible evidence establishing the elements of a cause of action for fraud. Accordingly, the defendants have failed to prove their special defenses.
F. Termination for Cause.
The defendants allege in the Sixth Special Defense that the plaintiff was terminated for cause, thus assuming the burden of proving that the plaintiff's performance was not merely subjectively unsatisfactory as far as they were concerned, but rather that they had an objectively substantial reason for terminating the plaintiff's employ. The Appellate Court in Slifkin v. Condec Corporation, 13 Conn. App. 538 (1988) directly addressed the issue of what constitutes legitimate cause for term:
 An employment contract for a definite or determinable term. . .may be terminated by either party only for good or just cause. Good cause, as distinguished from the subjective standard of unsatisfactory service, is defined as "[s]ubstantial reason, one that affords a legal excuse. . . [l]egally sufficient ground or reason." Black's Law Dictionary (5th Ed. 1979). Good cause or "`[j]ust cause' substantially limits employer discretion to terminate, by requiring the employer, in all instances, to proffer a proper reason for dismissal, by forbidding the employer to act arbitrarily or capriciously. See Pierce v. Ortho Pharmaceutical Corporation, 166 N.J. Super. 335, 341, 399 A.2d 1023 (1970)." Sheets v. Teddy's Frosted Foods, Inc. [170 Conn. 471, 475, 427 A.2d 385 (1980)]. In any contract of employment for a fixed period, an employee prematurely discharged without good or just cause may recover damages. [Cites omitted].
Slifkin, at 549. The defendants have stated that they were dissatisfied with the plaintiff's performance and the results thereby obtained. More than this is needed to satisfy the defendants' burden, however, and that has not been presented.
The revenue goals set by the defendants during negotiations CT Page 8997 and throughout the plaintiff's employ were never met to the defendants' full satisfaction. Achievement of the goals was not made a condition of the contract however, and the defendants had "total confidence" in the plaintiff's abilities and performance at the plaintiff's October, 1989 performance review. Even in March of 1990, no indication was given that the plaintiff was about to lose his job because of substandard performance. The defendants have failed to sustain the burden of proving a substantial reason for the termination; thus, the Court finds in favor of the plaintiff on the Sixth Special Defense.
G. At-Will Employment.
In their Seventh Special Defense, the defendants allege that the plaintiff was an at-will employee. As the Court has found an express contract between the parties for a term of three years, it finds in favor of the plaintiff on the Seventh Special Defense.
H. Failure to Mitigate.
The defendants have alleged that the plaintiff has failed to mitigate his damages and, thus, any recovery awarded him must be diminished. While the plaintiff did not earn any money during the relevant period, the success or failure of his reasonable efforts to minimize damages as supported by the evidence, is immaterial:
 "The injured party is not precluded from recovery . . .to the extent that he has made reasonable but unsuccessful efforts to avoid loss." 3 Restatement (Second), Contracts 350 (2) and comment h, and 347 comment c.
West Haven Sound Development Corporation v. West Haven,201 Conn. 305, 332 (1986). The burden is on the defendants to prove that the plaintiff's actions in starting his own business were unreasonable and, further, that it was unreasonable of the plaintiff to break his lease and fire his employee in order to accept a job offer with his former employer. The defendants have not met this burden. Accordingly, the Court finds for the plaintiff on the Eighth Special Defense.
Judgment may enter in favor of the plaintiff as to the First Count of the Revised Complaint and as to each Special CT Page 8998 Defense. Judgment may enter in favor of the defendant, Moore, as to the Second Count of the Revised Complaint. Damages in the amount of $450,647.63 are ordered in favor of the plaintiff, as to the First Count of the Revised Complaint.
SCHALLER, J.