[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff corporation described in testimony as a holding company, sold a business, Freedom Foods, to Holiday Foods, also a corporation. The principals in Holiday Foods were one Sandoval, a former employee of the plaintiff, and the defendant, Edward J. Chicoski. The plaintiff took back a note of $570,000. The note was paid down to $95,147.40. Because Holiday Foods was experiencing financial distress, the plaintiff asked Chicoski if Valley Food Distributors, Inc. ("Valley Food"), another corporation he was president of, would guaranty the indebtedness of Holiday. Valley Food, did, in fact, execute a promissory note, and a security agreement, marked Exhibits A and B, respectively. Prior to the execution of this guaranty, Valley Food had been negotiating to sell its hard assets and did sell same on or about May 28, 1997. Valley Food did retain accounts receivable and other assets with a total value of about $300,000. Valley Food continued to do business in a different location and on a smaller scale. In accordance with the guaranty to pay Holiday's indebtedness to the plaintiff, Valley Food paid about $35,000 then stopped paying when bankruptcy occurred. When Valley Food executed the guaranty in June, 1997, the plaintiff was aware of its precarious financial condition because it had seen a bank's letter which denied credit to Valley Food.
The plaintiff claims that when Valley Food sold the bulk of its equipment and inventory in May, 1997, that act constituted a fraud and that Chicoski, president of Valley Food, should be held personally liable.
Specifically, the Amended Complaint alleges that the defendant, Edward Chicoski, Jr., intended to defraud the plaintiff when Chicoski's corporation, Valley Food Distributors, Inc., sold assets on May 28, 1997 to a third party, Holiday Food Distributors, Inc. for $275,000. The essence of the Complaint is that the sale of assets without disclosure to the plaintiff, mislead the plaintiff into "lending" money to the defendant. Plaintiff did not lend money to Valley Food Distributors, Inc. Rather, the plaintiff conditionally restructured an existing debt of Valley Food Distributors, Inc. such that if 24 payments of $3,000 were made, the debt would be reduced from $95,147.60 to $72,000. If the payments were not made the debt reverted to the full amount. At no timeCT Page 8885prior to the June 27, 1997, sale of assets, was the Plaintiff a creditorof Mr. Chicoski individually.
After Valley Food paid $35,000 to the plaintiff over the next 13 months from July 1997 to August 1998, it defaulted. The plaintiff brought a collection action against Valley Food and a judgment was obtained for the full remaining balance. The plaintiff now seeks to hold Chicoski, Valley Food's president, individually liable.
The transfer of some of the assets of Valley Food Distributors was not fraudulent and does not comport with the requirements of Section 52-552e
of our Statute of Frauds. The court finds that even after Valley Food Distributors sold off most of its hard assets, it retained ample assets to satisfy its indebtedness to the plaintiff. Beyond that Valley Food Distributors received no direct benefit from the plaintiff and the plaintiff was not a creditor of either Valley Food Distributors or Edward Chicoski. The transaction alleged by the plaintiff does not come within the requirements of 52-550 and is unenforceable because there was no agreement in writing between the plaintiff and Edward Chicoski and the agreement was for more than a one-year duration. The pertinent language of Connecticut General Statutes § 52-550 provides "no civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party . . . to be charged; . . . (5) upon any agreement that is not to be performed within one year from the making thereof, or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."
It is settled law that "`[t]he essential elements for an action in fraud . . . are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury. Paiva v. VenechHeights Construction Co., 159 Conn. 512, 515, 271 A.2d 69 (1970); Clarkv. Haggard, 141 Conn. 668, [673,,] 109 A.2d 358 (1954); 122 Conn. 641,642, 191 A. 525 (1937); Bradley v. Oviatt, 86 Conn. 63, 67, 84 A. 321
(1912); Barnes v. Starr, 64 Conn. 136, 150, 28 A. 980 (1894). Miller v.Appleby, [supra, 183 Conn. at 54-55, 438 A.2d 811]." Maturo v. Gerard,196 Conn. 584, 587, 494 A.2d 1199 (1985); D. Wright J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 135.
If the defendant Chicoski intended to defraud the plaintiff, Valley Food Distributors would not have made payments totaling $35,000 to the plaintiff.
In Kilduff v. Adams, Inc., 219 Conn. 314, 327 (1991), the court stated: It is well established that common law fraud must be proven by a CT Page 8886 higher standard than a fair preponderance of the evidence. This middle tier standard has been described as "clear and satisfactory evidence" and as "clear, precise and unequivocal evidence." Verrastro v. MiddlesexIns. Co., 207 Conn. 179, 181, 540 A.2d 693 (1988); Aksomitas v.Aksomitas, 205 Conn. 93, 100, [219 Conn. 329] 529 A.2d 1314 (1987); J.Frederick Scholes Agency v. Mitchell, 191 Conn. 353, 358, 464 A.2d 795
(1983); Alaimo v. Rover, 188 Conn. 36, 39, 448 A.2d 207 (1982). The plaintiff has failed to meet its burden of proof.
Accordingly judgment is ordered in favor of the defendant.
By the court,
 ___________________, J. SCHEINBLUM
EXHIBIT A
*
 PROMISSORY NOTE
$95,147.40
FOR VALUE RECEIVED, VALLEY FOOD DISTRIBUTORS, INC., having a principal place of business at 85 South Leonard Street, Waterbury, Connecticut 06708 promises to pay to VANGUARD INVESTMENTS, INC., a MASSACHUSETTS CORPORATION, having a principal place of business at 38 Strand Place, Southbridge, Massachusetts the principal sum of NINETY-FIVE THOUSAND ONE HUNDRED FORTY-SEVEN and 40/100 ($95,147.40) DOLLARS with no interest except as provided below, payable as follows: TWENTY-FOUR (24) equal consecutive monthly payments of THREE THOUSAND and 00/100 ($3,000.00) DOLLARS beginning on the 1st day of July 1997 and continuing on the 1st day of each and every month thereafter until the entire balance of principal, if not sooner paid, shall be due and payable on June 1, 1999.
Notwithstanding the foregoing, it is expressly understood and agreed that provided the Maker timely makes each and every monthly payment otherwise due hereunder, the Holder shall deem this note to have been satisfied once the Maker has timely made twenty-four (24) consecutive monthly payments of THREE THOUSAND and 00/100 ($3,000.00) DOLLARS each, for a total of SEVENTY-TWO THOUSAND and 00/100 ($72,000.00) DOLLARS. If the Maker fails to timely make any such monthly installment, the entire balance shall at the Holder's option be due and payable in full without any discounts. CT Page 8887
It is hereby agreed that all costs of collection including any attorney's fee shall become a part of the debt and may be collected as part thereof on any action to collect this note.
Upon the occurrence of any Event of Default (as hereafter defined), or upon maturity hereof (by acceleration or otherwise), the entire outstanding principal balance of this Note, at the option of Holder, shall bear interest, from the date of occurrence of such Event of Default until payment (including any period of time occurring after judgment), at twelve (12%) percent per annum.
It shall be an event of default hereunder ("Event of Default") (i) if Maker shall fail to make any payment of principal due hereunder when due or (ii) if any voluntary or involuntary bankruptcy proceeding is filed by or against Maker. If an Event of Default shall occur, then, or at any time thereafter, the entire outstanding principal balance due hereunder shall, at the election of the Holder hereof, and without notice of such election, become immediately due and payable.
Presentment for payment, protest, notice of protest, demand and notice of nonpayment are hereby waived.
 2
Failure to exercise any option herein contained by any holder shall not constitute a waiver of the right to exercise the same in the event of any continued or subsequent default.
The unpaid balance of this note or any part thereof may be paid at any time without penalty.
This Note is secured by a security interest in all of the Maker's tangible and intangible personal property.
MAKER CERTIFIES THAT THIS IS A COMMERCIAL TRANSACTION AND EXPRESSLY WAIVES ALL RIGHTS UNDER SECTION 52-278A THROUGH 52-278G OF THE CONNECTICUT GENERAL STATUTES OF PRIOR NOTICE AND HEARING WITH RESPECT TO ANY FUTURE GARNISHMENT, ATTACHMENT OR REPLEVIN BY THE HOLDER AGAINST PROPERTY OWNED OR POSSESSED BY MAKER.
MAKER HEREBY WAIVES TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THE FINANCING TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART. MAKER ACKNOWLEDGES THAT THIS WAIVER IS MADE KNOWINGLY AND VOLUNTARILY.
VALLEY FOOD DISTRIBUTORS, INC. CT Page 8888
 BY /s/___________________ EDWARD J. CHICOSKI, JR. ITS PRESIDENT, DULY AUTHORIZED
97175\NOTE.0801.doc
EXHIBIT B
*
 SECURITY AGREEMENT
Agreement dated June 27, 1997 by and between VALLEY FOOD DISTRIBUTORS, INC. whose principal place of business is at 85 South Leonard Street, Waterbury, Connecticut 06708 (the "Debtor") and VANGUARD INVESTMENTS, INC. whose principal place of business is at 38 Strand Place, Southbridge, Massachusetts, (the "Secured Party").
SECTION 1. GRANT OF SECURITY INTEREST
For valuable consideration, receipt of which is hereby acknowledged, the Debtor hereby grants to the Secured Party a security interest in that property set forth in Exhibit "A" annexed hereto, which Exhibit is hereby incorporated by reference and made a part hereof, referred to in this Agreement as the "Collateral".
SECTION 2. OBLIGATIONS SECURED
The security interest granted in this Agreement shall secure the payment and performance of a certain Promissory Note of even date in the original amount of NINETY SIX THOUSAND and 00/100 ($96,000.00) DOLLARS from Debtor to Secured Party of even date herewith together with all liabilities of the Debtor to the Secured Party now existing or hereafter arising. All advances, charges, costs and expenses, including reasonable attorney's fees, incurred or paid by the Secured Party in exercising any right, power or remedy conferred by this Agreement, or in the enforcement hereof, shall become a part of the secured Obligations and shall be paid to the Secured Party immediately and without demand.
SECTION 3. REPRESENTATIONS, WARRANTIES AND COVENANTS
Debtor warrants and agrees that:
3.1 Debtor has the right and authority to grant this security interest. CT Page 8889
3.2 Debtor has good and marketable title to all of the Collateral, none of which are subject to any encumbrance or claim of any person.
3.4 Debtor will insure the Collateral at all times against all risks of fire, theft and any other hazards, the policy or policies to be payable to the Secured Party as its interest may appear. The policy or policies shall be satisfactory to the Secured Party as to form, amount and insurer. The Debtor shall furnish certificates, policies or endorsements to the Secured Party as proof of such insurance, and if the Debtor fails to do so, the Secured Party is authorized (but not required) to obtain such insurance at the Debtor's
 EXHIBIT "A"
All personal property of Debtor, wherever located, now owned or hereafter acquired or arising, including without limitation the following:
a) All Accounts and Accounts Receivable;
b) All Contract Rights;
c) All Inventory;
d) All General Intangibles;
e) All Equipment;
f) All Farm Products;
g) All Goods;
h) All Chattel Paper;
i) All Fixtures;
 j) All books, records, and information relating to the Collateral and/or to the operation of the Borrower's business, and all rights of access to such books, records, and information, and all property in which such books, records, and information are stored, recorded, and maintained;
k) All Instruments, Documents of Title, Documents, policies and certificates of insurance, Securities, deposits, deposit accounts, money, cash, or other property; CT Page 8890
 l) All federal, state, and local tax refunds and/or abatements to which the Borrower is or becomes entitled, no matter how or when arising, including, but not limited to any loss carryback tax refunds;
 m) All trade secrets, computer programs, customer lists, assignments of patents and patents pending, developmental ideas and concepts, and all papers, drawings, blueprints, sketches, and documents relating to all of the foregoing and/or relating to the operation of the Borrower's business and/or the Collateral;
 n) All insurance proceeds, refunds, and premium rebates, whether any of such proceeds, refunds, and premium rebates, arise out of any of the foregoing (a through m), or otherwise;
 o) All liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing (a through n) including the right of stoppage in transit.
08ExhibitAUCC