ₒ ROBERT MOLZON vs. PATRICK H. CARROLL.

Third Judicial District, Bridgeport, April Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

A lease provided that the lessee, upon a written notice of sixty days,
   should vacate the premises if the lessor "has an opportunity to
   effect a sale" of the property. *Held:*—
1. That a written notice to quit, given by the lessor, was not legally
   insufficient merely because the agreement of sale was made orally
   instead of in writing; nor because the notice was not signed by the
   lessor, inasmuch as its contents could have left no doubt of the
   identity of its author and of the purpose of the notice.
2. That a present, absolute opportunity to sell was not required in
   order to justify the lessor in giving the written notice to quit, but
   only a good-faith belief upon his part that he had such a chance or
   opportunity to sell.

Argued April 13th—decided June 1st, 1917.

WRIT OF ERROR to reverse a judgment of the City
Court of Waterbury, *McGrath, J.*, in an action of sum-
mary process. *No error.*

*Francis P. Guilfoile,* for the plaintiff.

*Edward J. Balthazar,* with whom was *Francis W.
Carroll,* for the defendant.

WHEELER, J. The bill of exceptions does not state
with as much particularity as it should the facts upon
which the claims of law desired to be reviewed rest.
These, as found in the admissions of the pleadings, in
the recitals in the bill of exceptions, and as conceded
by the parties, are as follows:—

The plaintiff in error, Carroll, on July 5th, 1916,
executed a lease of certain described premises to the
defendant in error, Molzon, who entered into, and has

continued in their possession from thence to the present time. The lease contained a covenant that "the said Molzon, upon the written notice of sixty days, shall vacate the premises described in the existing lease, if the said Carroll has an opportunity to effect a sale of the building and premises with its appurtenances." On September 8th, 1916, one Dauch entered into an oral agreement with Carroll to purchase these premises with their appurtenances, upon condition that the premises were transferred freed from Molzon's occupation and tenancy, and on September 9th, 1916, Dauch gave Carroll a certified check for $1,000 to bind the bargain. Dauch is ready, willing and able to complete the purchase, but will not do so until the premises are released from Molzon's lease and possession. On September 9th, 1916, Carroll, by registered mail, gave Molzon notice to quit possession of the premises sixty days from the receipt thereof according to the agreement, but the notice was unsigned.

The amended complaint set forth, in substance, these facts. It was demurred to because the agreement of sale was oral and unenforceable, and the notice given was insufficient because predicated upon an unenforceable agreement. Both reasons rest upon the claim that the agreement of sale must have been in writing. The lease did not so provide. This claim is made in a formal way; in reality it formed no part of the oral argument, and is barely referred to in the brief. The overruling of the demurrer was correct and may be passed without discussion.

Upon the trial Molzon claimed, as the bill of exceptions recites, that the notice given was insufficient, since (1) it was unsigned; (2) it did not state that the lessor had a present opportunity to sell, but merely an expectation of subsequently entering into a contract of sale; and (3) that the lease referred to an

absolute opportunity to sell, and not one conditioned upon lessor's ability to clear the title in the future.

The lease does not specify who shall give the notice, but it is fairly to be inferred that only the lessor was intended. It specifies that the notice shall be in writing; it does not specify that it shall be signed by the lessor, nor does it give the form of the notice. The parties might have provided for the form of the notice, and that the signature of the lessor should be essential to its validity. In the absence of such provision it seems unreasonable to hold the parties to a particular form of notice, and alike unreasonable to hold that the unsigned notice is invalid. The purpose of the notice is to apprise the lessee of a certain fact, and as far as the conveyance of knowledge of this fact is concerned, it can be done by oral as well as by a signed notice. The signature evidences the authenticity of the notice: it does not add to its contents. What the signature does is to point out the source of the notice, to identify its origin. This may be done by proof that the lessor gave it in person, or the body of the notice may show whence it came and whose it is.

The unsigned notice received by Molzon, the lessee, told him that it came from his lessor of these premises, and that it was given in pursuance of that agreement as a notice of termination of his tenancy, and that in case the inadvertent acceptance of rent for September prevented the lessor from ejecting him then, the lessor gave him on September 9th, 1916, a notice to quit within sixty days from its receipt in accordance with the agreement. In addition, the printed superscription upon the letter-head contained the name, business, and address of the lessor, Carroll. So informing was this notice that Molzon must have known that Carroll sent it to him intending it as the notice called for by

their agreement. And when a notice to quit possession does inform the person in possession that it comes from his lessor, and neither the agreement of the parties nor the statute requires it to be signed, its source is definitely determined, and the signature to the notice will not tell the lessee more, and is not essential to make the notice valid. *Tooele Meat & Storage Co.* v. *Morse*, 43 Utah, 515, 520, 136 Pac. 965; *Leite* v. *Croveiro*, 36 R. I. 62, 89 Atl. 20; *Lund* v. *Ozanne*, 13 N. M. 293, 84 Pac. 710; *In re Farmers' Supply Co.*, 170 Fed. Rep. 502; *Finnegan* v. *Lucy*, 157 Mass. 439, 440, 32 N. E. 656.

The remaining claims require a construction of the words of the lease, "if the said Carroll has an opportunity to effect a sale"; for the right to give the written notice to quit is made to depend upon the existence of this opportunity. Whatever may have been the differences upon the trial, the parties now agree that "an opportunity to effect a sale," means a chance existing in good faith to effect a sale. This language is said to be intended to express a present, absolute opportunity to sell. If that be the true construction, the lessor, although apparently desirous of effecting a sale, has inserted a provision which will deter purchasers. The purchaser wants possession as early as possible. If the notice must wait the present, absolute opportunity, at least sixty days thereafter must elapse before the transfer; and intending purchasers may not be willing to wait.

The language itself does not invite, much less require, this construction. It would be against the interest of the lessor, and hence unlikely to have been intended by him. The construction which seems to us to accord with the language used, and the probable intent in its use, is that the opportunity was not one which should in all events exist, but merely one in

which the lessor should have a belief in the chance to effect a sale and one founded in and governed by good faith.

There is no error.

In this opinion the other judges concurred.