[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff bank has brought suit against Gary and Francesca Menillo, Scott G. and Shirley S. McGowan, Peter and Marie Silano and SGM Development Inc. a/k/a SGM Development Company (SGM), on a note in the face amount of $50,000.00 dated CT Page 7935 October 24, 1989, which is payable in installments. The individuals named are alleged to have guaranteed payment of the note by instruments dated April 3, 1989 and that the guarantees contained a provision providing for waiver of notice of future loans and extensions of credit to SGM. It further alleges a default in payments of the note, demands for payment by the defendants and claims, costs of collection, and reasonable attorneys fees. It has been stipulated that judgment may enter against SGM. The action has been withdrawn as to Peter and Marie Silano who have had the liability discharged in their bankruptcy proceedings. The defendants answer consists mainly of denials and leaving the plaintiff to its proof. By way of a special defense they allege that the plaintiff was notified as to this note that the individual defendants would not guaranty it, to which the bank agreed, and also that the alleged guaranty would not be effective, a representation which the defendants relied on and that the actions of the plaintiff constituted fraud. The second special defense is that the plaintiff has unclean hands; the third defense is the defendant received no benefits and therefore received no consideration; the fourth that the plaintiff's actions are a violation of the unfair trade practices act; fifth that the plaintiff waived and therefore is estopped from enforcing the guarantees; and sixth that the plaintiff failed to comply with the banking laws. The defendants have also filed a counterclaim for fraud and unfair trade practices. The plaintiff's answer and reply to the special defenses and counterclaim consists of denials and leaving the defendants to their proof. Prior to trial the defendant Shirley McGowan retained her own attorney who added two more special defenses to the existing six which alleged fraud in obtaining the guarantee, and two, that they are therefore estopped from any recovery. The other three defendants are represented by another attorney.
The facts are found as follows. The defendant SGM came to the plaintiff at its Bridgeport office and obtained a loan of $50,000.00 on April 3, 1989 which was closed at the plaintiff's Monroe office. A requirement of that note was that all the named persons guarantee the payment of that note which they did by separate instruments. That note was paid on July 3, 1989 its due date. Subsequently on July 24, 1989 the plaintiff made another loan of $50,000.00 to SGM which was executed for the corporation by Vincent Menillo and Scott McGowan. The last two persons and Peter Silano were engaged in the construction business as a corporation knows as SGM. In the body of the agreement are the following paragraphs
 "In consideration of your having made or making, now or in the future, loans, advances, or otherwise giving credit to the above-named borrower CT Page 7936 (hereinafter called "Borrower"), the undersigned, jointly and severally (hereinafter sometimes called the "Guarantor"), hereby unconditionally guarantees and agrees to be liable for the full and prompt payment and performance at maturity, including any accelerated maturity, of any and all liabilities or obligations of the Borrower to you of every kind and description, direct and indirect, primary or secondary, absolute or contingent, due or to become due, now existing or hereafter arising, regardless of how they arise or by what agreement or instrument they may be evidenced by any agreement or instrument, including, but not limited to, all costs, expenses and attorneys' fees included in the collection of said liabilities and in the enforcement of this guarantee (all of the foregoing being hereinafter called "Guaranteed Obligations")."
 "This is a continuing guarantee and shall remain in full force and effect and be binding upon the undersigned until written notice sent by registered or certified mail, addressed to:
 PEOPLE'S BANK Commercial Lending Department 850 Main Street P.O. Box 1580 Bridgeport, CT 06604
 of its revocation shall be actually received by you. No such revocation shall release the undersigned or affect in any manner your rights under this guarantee with respect to any of the Guaranteed Obligations arising prior to actual receipt by your of such written notice of revocation and any such revocation by one of the undersigned shall not affect the continuing liabilities hereunder of such of the undersigned as do not give such notice of revocation. If any of the present or future Guaranteed obligations are guaranteed by persons, partnerships or corporations in addition to the undersigned, the release or discharge in whole or in part, or the death, bankruptcy, liquidation or dissolution of one or more of such persons, partnerships or corporations shall not discharge or affect the liabilities of the undersigned under this guarantee.
The Guarantor acknowledges that the underlying CT Page 7937 transaction to which this guarantee relates concerns you having made or making, now or in the future, loans or advances, or otherwise giving credit to the Borrower,. . . ."
The guarantees were executed for the first loan which was paid in full and the plaintiff now claims liability of the signers of those guarantees since they continued in effect for all future loans of which the instant loan was one. The bank's vice president who executed the loan for SGM told Vincent Menillo and Scott McGowan that the other guarantors would not have to appear and those two could execute the note, which they did. The bank officer at the Monroe branch executed the loan and she not only was not authorized to make any representations of no responsibility on this note by reason of their guarantee to the defendants, but she in fact made no representations. All of the negotiations for the second loan with the Bridgeport office were handled on the telephone. Shirley McGowan never went to the bank to sign the guaranty and the bank officer gave Scott the instrument which he took home to her while she was ill and she signed it there. The guaranty was explained to the men but not to Mrs. McGowan or Mrs. Menillo who neither reads or speaks English well, however she signed it at the bank in Bridgeport. Neither women knew that SGM got the second loan or was ever communicated with about that loan. None of the parties signing the guarantees read them, since they disclaim any knowledge of liability on future loans. Had any of the defendants read the guarantee it would have been readily apparent that they covered future loans. The wording of the guaranty agreements is direct and unambiguous and makes the signers responsible for all future loans. What the bank officer McKernan explained and the defendants Gary Menillo and Scott McGowan may have misunderstood was that the wives did not have to appear to sign the second SGM note. It may have been that statement that they misinterpreted as freeing their wives from liability. It is difficult for this court to understand that the wives felt they had no liability on the note when they claim no knowledge of the loan and note evidencing it.
The court finds that the guaranty signed by all the defendants was a continuing one. Relying on the language of the guaranty in particular the portions thereof hereinbefore quoted, the agreement expressly provides for loans now made and for future loans. See Monroe Ready Mix Concrete Inc. v. Weston Development Corp., 183 Conn. 348, 351; Connecticut National Bank v. Foley, 18 Conn. App. 667.
In order to find any of the defendants without liability it will be necessary to sustain one or more of their special defenses. To the defendants claim that they never read the CT Page 7938 guaranty is the holding in Connecticut National Bank v. Foley, supra 673. "A guarantor's failure to keep himself informed as to his liability under the guaranty has been held to constitute sufficient grounds to hold the guarantor liable. See Hartford-Aetna National Bank v. Anderson, 91 Conn. 643, 648. The defendants right to revoke the continuing guaranty are contained in the instrument itself and requires written notice which is not claimed herein, however oral evidence of such revocation is claimed which does not meet the requirements of the agreement. The defendant had the burden of proving oral notification. First Hartford Realty Corp. v. Ellis, 181 Conn. 25. That burden must be established by clear and convincing evidence which was not done here. Dinado v. Gelormino, 2 Conn. App. 275,277. "The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his primary interest, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications including intervention of fraud or artifice, or mistake not due to negligence and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter. Batter Building Materials Co. v. Kershner,142 Conn. 13. While all of the defendants were not good at reading they were adults with some reading ability who did not take the time to read the guaranty they were signing. Further there was no intervention of fraud, artifice or mistake which was not due to negligence which takes the case out of the standard enunciated and nothing was said or done which would mislead the defendants, or put them off their guard.
The defendant makes an issue of fact that both notes in evidence are marked and unmarked as follows: "Security interests [X] There is no property securing this loan . . . the loan is secured by". The first box marked indicates no security and the second unmarked does not indicate that any security was given. In fact there was security, the guarantees, and while they were not tangible assets, they still were intangible assets which stood as security for the loan. The bank officer explains the marking of the boxes by defining security as only tangible assets which to him did not include signed guarantees. While it is apparent that he was wrong in his definition of security, it does not avail these defendants. The two wives did not see the notes and so could not have been misled and the guarantees contain the requirement of written notification of revocation in order for the guarantees to effectively terminate, which was not done here. In spite of the defendants claims this mistake by the bank officer does not effectively terminate the defendants liability. CT Page 7939
The defendant Shirley McGowan first claims that Scott McGowan was the plaintiff agent in securing her signature on the loan. Three elements are required to establish the existance [existence] of an agency: 1) a manifestation by the principal that the agent will act for him; 2) acceptance by the agent of the undertaking; 3) and understanding between the parties that the principal will be in control of the undertaking Beckenstein v. Potter 
Carter Inc., 191 Conn. 120, 133. There is no evidence of a manifestation by the plaintiff that Scott McGowan was acting for the bank, or that he agreed to act as the bank's agent, or that the bank was in control of the undertaking. What is clear is that Scott McGowan was acting for himself in securing his wife's signature since he could not accomplish the SGM loan without it. The defendant Shirley McGowan argument that Scott McGowan committed fraud by failing to disclose that she was executing a continuing guarantee is without merit. She had only to read the agreement delivered to her to find out that it was a continuing agreement as stated hereinbefore and her failure to read it does not make the plaintiff guilty of fraud. In addition this court has hereinbefore found that Scott McGowan was not the agent of the plaintiff.
The first special defense that the bank agreed to the defendants not guaranteeing the note has hereinbefore found to be factually without a basis and requires no further discussion. The second special defense of unclean hands has not been made out at all and in addition it constitutes an equitable defense in a civil action. The third defense that the defendants received no consideration is in fact without any basis. The first loan was consideration for the guarantees of that loan and future loans. "The modern law of contracts makes guaranties enforceable on the basis of reliance. Restatement (Second) Contracts 88C (Tent Ed 1973)" Superior Wire Paper Products Ltd. v. Tolcott Tool Machine, Inc., 184 Conn. 10, 20
Restatement (Second) Contracts 89C (Tent Ed 1973) provides "Guaranty. A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if (a) the promise is in writing and signed by the promisor and recites a purported consideration; or (b) the promise is made binding by statute or (c) the promisor should reasonably expect the promise to induce action or forbearance of a substantial character on the part of the promisee or a third person and the promise does induce such action or forbearance. In the instant case the defendants' promise induced substantial action, the second loan, as well as the first. The fourth defense that the plaintiff's actions are a violation of the unfair trade practices act has not been proven, nor have the defendants briefed the issue. "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the `cigarette rule' by the federal trade commission for determining when a CT Page 7940 practice is unfair: (1) [W]hether the practice without necessarily having been previously considered unlawful offends public policy as it has been established by statute the common law or otherwise — Whether in other words it is within the prenumbra of some common law statutory in other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]" Cheshire Mortgage Service Inc. v. Montes, 223 Conn. 88, 105. These criteria have not been established herein either singly, nor do they meet to a lesser extent all three. The fifth defense of waiver and estoppel has already been denied by the courts finding of facts which establish that there was no waiver of the guarantees and therefore no estoppel. Mrs. DiCenzo the bank officer did not tell the men who signed the note for SGM that they or their wives would not be liable on their guarantees. It is quite possible that she said they did not have to sign the corporate note which they could have misunderstood to mean no liability on the part of the guarantees. The sixth special defense that the plaintiff failed to comply with the banking laws has had no evidence presented to prove that there was such a violation nor has it been briefed and will not be considered. The defendants have devoted some portion of their brief with respect to oral modification of the written guaranty. The factual finding by the court effectively indicates that there was no oral agreement even if it were possible to affect the written guaranty.
As to the defendants counterclaim the issues of CUTPA have hereinbefore been decided in the plaintiff's favor and therefore need no further discussion. The requirements for an action of fraud are stated as "`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.'" Alexander v. Church, 53 Conn. 561, 562, 4A. 103 (1886), quoting T. Cooley, Torts, p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Gerard, 196 Conn. 584, 587, 494 A.2d 1199
(1985); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811
(1981)." Billington v. Billington, 220 Conn. 212. See Jucker v. Jucker, 190 Conn. 674, 678. Since the court has found that no statements were made by the bank officers about the guarantee it follows that there was no false representation made and it therefore was not true or untrue, nor could there be an intent to induce reliance or that any party could have relied on it. The defendants' have failed to prove the allegations of the counterclaim. CT Page 7941
Judgment may enter for the plaintiff on the complaint to recover the sum of $50,000.00 together with interest of $15,213.17 due to May 5, 1992 plus an attorneys fee of $6,000.00 for a total of $71,213.17 against the defendants SGM, Gary Menillo and Francesca Menillo and Scott McGowan and Shirley McGowan (aka. Shirley Sciongy) together with costs of the action. Judgment may enter for the plaintiff on the counterclaim.
LEVINE, S.T.R.