[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendant's Motion for Summary Judgment dated February 16, 1995 is hereby granted for the following reasons:
1. In this case, plaintiff Michael Hidek has sued defendant Aid Association for Lutherans ("AAL") to enforce his alleged right to collect disability income benefits under the Occupation Protection Rider to his AAL disability insurance policy.
2. According to his Revised Complaint dated April 28, 1994, the plaintiff alleges that: (1) on or about May 1, 1991, in consideration for a premium which he duly paid, AAL executed and delivered to him an insurance policy, insuring him for loss from disability due to sickness; id., ¶ 2; (2) effective June 6, 1991, an Occupation Protection Rider was issued for the above-described policy; id., ¶ 3; (3) on June 26, 1991, he became disabled, within the meaning of his AAL disability insurance policy, by post-traumatic stress disorder, and has been so disabled ever since; id., ¶ 4; (4) upon becoming so disabled, he filed with AAL, on forms provided by AAL, both a notice of his disability and proof of such disability; id., ¶ 5; (5) he has performed all of the conditions required of him to collect benefits for his disability under the terms of his AAL disability insurance policy; id., ¶ 6; (6) even so, on or about November 3, 1993, AAL discontinued all payments to the plaintiff under his disability insurance policy and refused to honor the Occupation Protection Rider to that policy; id., ¶ 7; and (7) AAL has failed and neglected, and still fails and neglects, to pay the plaintiff the benefits which are due him under his Occupation Protection Rider. Id., ¶ 8;
3. The defendant now moves this Court to enter summary judgment in its favor on two grounds: first, that the plaintiff is not entitled to receive disability benefits under the Occupation Protection Rider to his insurance policy because he made misrepresentations of material fact concerning his regular occupation when he signed the application for the Rider; and second, that even if the Rider in question was properly issued, the plaintiff has failed to fulfill the express CT Page 6925 condition of said Rider requiring that he be under the care of a doctor during any period of total disability for which he seeks to collect benefits thereunder.
4. In support of its Motion for Summary Judgment, the defendant has presented substantial evidence tending to show that the plaintiff procured the Occupation Protection Rider here at issue by materially misrepresenting critical facts in his application therefor. Such evidence is well summarized in the defendant's Memorandum of Law in Support of Motion for Summary Judgment dated February 16, 1995.
Even so, the Court must agree with the plaintiff that its sole responsibility on a motion for summary judgment is to determine whether genuine issues of material fact exist, not to decide those issues if they do exist. See generally Telesco v.Telesco, 187 Conn. 715, 718 (1982). Hence, the Court must only grant summary judgment if the evidence presented in support of a dispositive fact or set of facts is so powerful as to require the granting of a directed verdict. Under that standard, the defendant's proof of misrepresentation falls short of the legal mark.
It is well established in Connecticut that allegations of fraud and misrepresentation typically present issues of fact which a jury must decide, Miller v. Bourgoin, 28 Conn. App. 491, 4 (1992); Maturo v. Gerard, 196 Conn. 584, 587 (1985). Thus inMcClintock v. Rivard, 219 Conn. 417, 427 (1991), our Supreme Court specifically noted that". . . a summary judgment procedure is particularly inappropriate where the inference which the parties seek to have drawn deals with questions of motive, intentional subjective feelings and reactions. . . . It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised." In sum, absent uncontradicted or otherwise irrefutable proof of misrepresentation, the question whether or not a party has misrepresented a material fact must be left for the determination of the trier of fact.
In this case the plaintiff has not admitted that he misrepresented any fact on his application for the Occupation Protection Rider. Nor has any other incontrovertible proof of such misrepresentations been submitted for this Court's consideration. Here instead, the defendant claims that the plaintiff should have informed it that by the time he filed his CT Page 6926 application, he had already resigned from his current post as guidance counselor and had not yet sought or found new employment in that field. Because, claims the defendant, these facts were omitted from the plaintiff's application, the defendant was misled to believe that the plaintiff had a long-term insurable interest in continuing to work as a guidance counselor, when in fact he did not. This fact notwithstanding, the plaintiff's affirmative statement that he was still working as a guidance counselor at the time of his application was admittedly true. Whether his failure to inform the defendant of his imminent plan to leave his current job was, in context, a misrepresentation of a material fact is a question of fact to be decided by the jury. Accordingly, the Court cannot lawfully conclude that the defendant is entitled to summary judgment on the misrepresentation aspect of its claims.
5. The second ground upon which the defendant claims that it is entitled to summary judgment is that the uncontested evidence of record shows a failure by the plaintiff to comply with an essential requirement for the receipt of benefits under his Occupation Protection Rider, to wit: that he be under the care of a doctor during any period of alleged disability for which he seeks to collect benefits. In support of this argument, the defendant has presented the following facts: (1) that upon procuring his Occupation Protection Rider, he became entitled to disability income payments starting on the two-way anniversary of his original disability for so long as he was prevented from performing the duties of his regular occupation; Affidavit of Ellyn L. Forbeck, ¶ 6; (2) because he began to receive disability benefits on June 26, 1991, his right, if any, to receive benefits under his Occupation Protection Rider did not begin until June 26, 1993; Forbeck Affidavit, ¶ 8; (3) under the terms of his Occupation Protection Rider, the following rule prevailed: "During a period of total disability the covered person must be under the care of a doctor;" and (4) the plaintiff himself admitted, by failing to respond to the defendant's November 14, 1994 Request for Admissions, that he has received no medical care for his claimed disability since April or May 1993. On the basis of these facts, the defendant claims that there is no genuine issue of material fact that the plaintiff is not entitled to benefits under his Occupation Protection Rider, for at no time for which he seeks such benefits did he comply with the term of that Rider that he be under a doctor's care.
6. The plaintiff makes no effort to contradict the foregoing CT Page 6927 claim. Instead, he explains that the reason why he stopped seeing a doctor for his problems was that he was not required to do so under the terms of a new agreement which he and AAL entered into as a result of private mediation in 1993. Noting that the defendant itself presents two counterclaims for breach of the new 1993 agreement, he claims that:
 This agreement should be referred to because (1) it provides for the continuation of payments to the Plaintiff upon certain conditions and (2) none of the conditions mention anything about continuing medical treatment. Certainly the parties have the ability to modify by mutual agreement the contract of insurance between them, and that is what happened here.
Memorandum of Law in Opposition to Motion for Summary Judgment dated March 17, 1995, p. 9.
In discussing the aforementioned agreement, the plaintiff states that:
 The parties agreed that CorVel Corporation would provide rehabilitation services to the Plaintiff, at Defendant's expense. A letter from Barbara Allen, a licensed rehabilitation counselor employed by CorVel, confirming the provision of these services is attached [to the Memorandum] as Exhibit E. At some point CorVel communicated to the Defendant that there was a "problem" in providing these services, but refused to disclose to the Plaintiff the communication itself or the nature of the supposed problem (See Exhibit F attached [to the Memo]).
 The Defendant thus discontinued the rehabilitation services, but now has the audacity to portray the Plaintiff as being in breach. Why is this agreement, which says absolutely nothing about further treatment CT Page 6928 outside of that coordinated by CorVel, not even mentioned by the Defendant? Why does the Defendant for the first time assert this defense in its Motion for Summary Judgment when it is not raised as a special defense? Whey [sic] did the Defendant agree in the Memorandum of Understanding "not to use Mr. Hidek's acceptance of a refund check as a defense" when in its Third Special Defense it makes exactly such a claim?
 For the foregoing reasons, the Defendant's Motion for Summary Judgment should be denied.
Id., pp. 9-10.
7. The Court must initially observe that the modified agreement on which the plaintiff now wishes to rely appears nowhere in his own Revised Complaint. Had the plaintiff here sought to enforce a modified agreement with different terms than those of his original contract of insurance with its Occupation Protection Rider, it was his responsibility to plead both the existence of that agreement and all facts necessary to demonstrate his entitlement to receive benefits thereunder. Here, instead, he expressly seeks relief only for the defendant's alleged failure "to honor the Occupation Protection Rider," Revised Complaint, ¶ 7, and resulting "fail[ure] and neglect
to pay the benefits due [him] under [said] Rider[.]" Id., ¶ 8. Having failed to seek relief on any other basis, he cannot now defeat the defendant's motion for summary judgment based on the existence of a genuine dispute concerning some other, unpleaded theory of liability.
Second, a review of the documents claimed to evidence the modified agreement upon which the plaintiff now relies reveals that that agreement, though born of an effort to mediate the parties' underlying dispute concerning the plaintiff's eligibility for benefits under his Occupation Protection Rider, did not purport to resolve that dispute or to vary the terms of the Rider itself. Instead, it was a temporizing measure by which the parties agreed to postpone the litigation of their dispute under circumstances designed to obviate the need for such CT Page 6929 litigation.
Under the new agreement, the plaintiff was to collect benefits from the defendant until December 31, 1993 while participating in rehabilitation efforts, paid for by the defendant and coordinated by CorVel Corporation. The planned rehabilitation program was designed to prepare the plaintiff for immediate reemployment as a guidance counselor. On the face of the agreement itself, it was quite clear that no benefits to be paid thereunder would be paid under the plaintiff's Occupation Protection Rider, which the defendant had expressly rescinded. Rather, all payments were to be made as consideration for the plaintiff's fulfillment of his part of the new agreement, that is: postponing all litigation to obtain coverage under the rescinded Occupation Protection Rider and participating in good faith in the planned rehabilitation effort Thus, not only did the mediator's description of the parties' agreement specifically note that the Rider had been rescinded; Mediator Memorandum to Counsel dated February 25, 1993, p. 2, ¶ 3; but it expressly contemplated that the parties' dispute about coverage under the Rider might be litigated in the future if the plan for the plaintiff's rehabilitation did not succeed.
This reading of the new agreement as a wholly separate undertaking between the parties, independent of the disputed Occupation Protection Rider, is confirmed by a March 26, 1993 letter from defendant's representative, George Vitelli, to the mediator. This letter, which was submitted by the plaintiff in opposition to the instant motion, makes two explicit statements which clearly prove that the agreement did not displace or modify the terms of the Rider itself. The first is the following clarification of the defendant's position in its dispute with the plaintiff concerning the Rider:
 [O]ur position [is] that the principle [sic] issue in contention is whether Mr. Hidek had an insurable interest in his job which would enable AAL to issue the occupation protection rider to his long term disability policy as requested . . . . [I]t is AAL's position that Mr. Hidek misrepresented the fact that his employment would continue at the time of his application for the occupation CT Page 6930 protection rider when in fact he had previously resigned his position with the Glastonbury School System and had not at the time of his application, obtained further employment.
Letter from Vitelli to Mediator, March 26, 1993, p. 2. By so stating, Mr. Vitelli clearly noted that, notwithstanding the new agreement, the parties' dispute concerning coverage under the Rider was still unresolved.
The second statement in Mr. Vitelli's March 26, 1993 letter is equally revealing. In it, he noted that the portion of the new agreement which called for the defendant to pay the plaintiff benefits should be worded as follows:
 AAL will continue Mr. Hidek's disability benefits under the terms and conditions of the long term disability policy as it exists without this occupation protection rider
through December 31, 1993.
Letter from Vitelli to Mediator, March 26, 1993, p. 2 (Emphasis in original). From this statement — part of a letter on which the plaintiff relies — nothing could be clearer than that the agreement which resulted from the parties' mediation efforts neither resolved, displaced, nor modified the terms and conditions of the Occupation Protection Rider under which the plaintiff now seeks to recover benefits.
8. Against this background, the plaintiff's entitlement to benefits under the disputed Rider depends upon his compliance with all of the terms and conditions of the Rider — a fact the plaintiff has formally acknowledged by making the following allegation in his Revised Complaint:
 6. Plaintiff has performed all of the conditions required of him by the above-named policy.
Id., ¶ 6. Because one such mandatory condition was that "[d]uring any period of total disability the covered person must be under the care of a doctor," and the defendant has produced uncontroverted evidence that the plaintiff was not under the care CT Page 6931 of a doctor at any point during the post — June 26, 1993 time period in which now claims a right to receive coverage under the Rider, the defendant's motion for summary judgment must be granted.
It is so ordered this 6th day of June 1995.
Michael R. Sheldon Judge