[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (Re #172, 173, 174, 175, 177)
This matter is before the court post-judgment while an appeal of the trial court decision is pending before the Supreme Court. The date of the dissolution of judgment is July 18, 1996. Subsequent to that date, during the pendency of the appeal, there have been numerous proceedings before the court.
On October 4, 1996, orders were entered (#153) regarding the payment of counsel fees for the appeal.
On that same date, a contested hearing was held regarding the plaintiff's Application for Stay Pending Appeal (#150). Testimony was taken. Financial affidavits were submitted by the parties. The court granted the Application and entered further orders. As necessary hereinafter, those orders shall be detailed.
Subsequent to that hearing, the parties were back before the court on December 19, 1997, regarding Motion for Order (#163). By memorandum of decision, this was denied on January 21, 1998. The CT Page 7729 court ruled that it lacked jurisdiction to enter orders, as urged by both parties, regarding the manner in which to finance and then service the debt to be incurred in the exercise of certain stock options soon expiring. Motion to Enjoin Pendente Lite (#164.55) was heard and denied by the court on March 16, 1998. There, Ms. Bornemann sought an order of the court, inter alia, restricting the utilization of those options that had not been awarded to her but remained with her ex-husband. The evidence before this court, presently, regarding the Amended Motions for Sanctions (#175) discloses that notwithstanding the court orders, Ms. Bornemann, through counsel, continued to lead Merrill Lynch (the broker holding the stock shares) to believe that there was a court order preventing Mr. Bornemann from having access to the stock (exhibit 19). Ultimately that misapprehension was cleared up. However, Mr. Bornemann in that motion claims attorney fees for his efforts to release his stock from a freeze.
The parties appeared before this court for hearing on the motions covered by this memorandum of decisions. Evidence was received and briefs were filed.
On October 4, 1996, when this court granted the plaintiff's motion for stay regarding the alimony order in the final judgment, it also entered other orders. The court ordered (from the bench) that the child support ordered at final judgment was to remain unchanged; and, that the alimony order was stayed when the pendente appeal alimony order was entered in the amount of $575 per week. The court further ordered: "Each party is instructed to give the other party notice of procurement of employment in writing within ten days of receipt of the employment. That will give you time to figure out the circumstance of the employment, and the name of the employer, the job description, you know, basically and the benefits which include the salary, salary plus benefits package. . . . And service counsel through counsel will be adequate, it need not be notice party to party." (pp. 48-49 transcript, October 4, 1996 hearing). At the time these orders were entered Ms. Bornemann was essentially unemployed and Mr. Bornemann was quickly approaching the very end of a severance-type pay from his most recent employment with no new employment at hand.
These orders were entered on October 4, 1996. At that time, Ms. Bornemann told the court she had no job. In regard to her job searching as of October 4, 1996, she reported investigating a part-time job in retail clothing with poor hour availability (p. CT Page 7730 19 transcript October 4, 1996 hearing). As of October 4, 1996, she testified she'd had no job interviews except as assistant field hockey coach at Guilford High School (p. 14). She further testified that she had one scheduled interview on Monday of the coming week with a company" . . . based out of Manhattan with a New Haven subsidiary, they're a commercial real estate firm and I am applying for a position of real estate analyst." (pp. 10-11). Ms. Bornemann had heard of the position through a friend of hers. She was told by friends in Washington, "Oh, by the way there's an organization out of Manhattan that's looking to open up a New Haven office and I contacted this company. I had spoke with them on the telephone. I sent them a resume and they scheduled the interview for this coming Monday at 2:00 in their Manhattan office." (p. 13).
The evidence before the court in the instant hearing discloses a much different picture of what was occurring at or about October 4, 1996. On that Monday following the hearing, Ms. Bornemann was at work at her undisclosed employment with Westport Commercial Realty, Inc.. This firm came to her attention through an ad in a local paper Initially, they paid her $150.00 per week as installments on a flat fee contract. This arrangement lasted until March 23, 1997. Ms. Bornemann was a subcontractor in this employment pursuant to an agreement dated September 23, 1996, almost two weeks before the October 4, 1996 hearing.
Ms. Bornemann would have this court believe that the agreement was backdated because of the principal of Westport's (Mr. Orgel's) tax needs. Further, she assured the court that this was by no means firm employment when she was before the court on October 4, 1996. Ms. Bornemann is not credible. Her answers regarding this issue vacillated and changed as she testified. Perhaps most telling, however, is Mr. Orgel's testimony. His deposition was placed in evidence, by agreement of the parties, in lieu of his appearance before court, as testimony. His testimony does not disclose that the agreement was backdated. Mr. Orgel testified that he and Ms. Bornemann initially talked sometime in mid-September. The $150.00 per week reflected installment payments on a flat fee contract. By letter to Mr. Bornemann's counsel dated April 14, 1997, Mr. Orgel stated, "Ms. Bornemann's services were contracted for a flat fee of $7,500.00 for the period of September 23, 1996 to March 23, 1997. Per our agreement, this is broken down into installments of $150 per week with any remaining balance to be paid by April 30, 1997." (Exhibit 1C). Ms. Bornemann disclosed none of this to the court CT Page 7731 on October 4, 1996. This court finds that Ms. Bornemann lied on October 4, 1996, and, intentionally concealed the information of impending employment with Westport.
She disclosed none of it thereafter to Mr. Bornemann or his counsel until ultimately the information was demanded, after Mr. Bornemann inadvertently learned of the employment through a third party. This failure to disclose the employment information is a violation of the court order of October 4, 1996.
There came a time in early 1997 that Ms. Bornemann's financial arrangement with Westport changed. Her services had become more valuable to Mr. Orgel and so they renegotiated. The result was an agreement where he would pay her 5% of fees he received Ms. Bornemann's 1997 1099 disclosed that she received $34,931.25 from Westport in 1997. Mr. Orgel had disclosed that $4,250 of her flat rate fee was paid 1996. Therefore, $3,250 of the flat fee arrangement was paid in 1997; simple subtraction leads to the conclusion that Ms. Bornemann earned an additional $31,681.25 at Westport from her renegotiated payment arrangements. This was never disclosed by her (or her counsel) to Mr. Bornemann. This is a violation of the court order of October 4, 1996.
Ms. Bornemann left her employment with Westport for her current employment with Campbell Black Partners LLC. Ms. Bornemann is a principal of this entity. She is a real estate financial analyst in this real estate development business. A proposed operating agreement has been drafted by the members. They have not signed it, as it is a `work in progress'. However, they utilize it for its guiding principles for operation. Ms. Bornemann has not yet been paid for her services with Campbell Black, nor has she received income as a member. She will be paid in lump sums as investment deals brokered, analyzed and/or recommended by her firm come to fruition and close. Several are in the pipeline, at various stages. It is her full time employment. She left her employment with Westport for the position with Campbell Black in August, 1997. The $31,681.25 that she earned with Westport on the percentage of fee basis was earned during the period from April through August, 1997, a five month period. If that income had continued on that basis, she would have had annualized earnings of $76,035 (or, $1,462.21 per week.) Ms Bornemann could have stayed at her position with Westport; no determination had been made by the employer about her future (p. 30, Orgel). Ms. Bornemann voluntarily terminated CT Page 7732 her employment with Westport to pursue her opportunity at Campbell Black (p. 23, Orgel). Further, Ms. Bornemann violated the court order of October 4, 1996 by failing to disclose her employment with Campbell Black. Her defense to these non-disclosures is that they are not material because Mr. Bornemann was litigating these issues with her and was finding everything out through discovery mechanisms. That is no excuse and is not wholly accurate. None of these employment changes were voluntarily disclosed by Ms. Bornemann as required by the court order of October 4, 1996.
Mr. Bornemann complains of this conduct of Ms. Bornemann in various respects, through various motions, seeking relief.
Amended Motion for Sanctions (#175)
The court finds by a preponderance of the evidence that Ms. Bornemann, through her counsel, misrepresented to Merrill Lynch the effect of the court's order to deny Ms. Bornemann's Motion to Enjoin Pendente Lite (#164.55). That Motion requested "[t]he court to enjoin the defendant from transferring, selling or otherwise disposing of his stock options, stocks, or stock proceeds pending further order of the court." On March 16, 1998, that motion was denied by the court. On March 24, 1998, plaintiff's counsel continued to assert to Merrill Lynch that there was a stay as to all stock. (The order of Judge Alander alluded to was an order, by agreement of the parties that the defendant would not touch the stock or stock options awarded to the plaintiff. The parties have never been confused before this court as to the limit of that order.) The amended motion for sanctions is granted. Attorney fees are awarded to Mr. Bornemann from Ms. Bornemann for 10.45 hours of his counsel's time. Counsel's bill is in evidence (exhibit 13). The court finds that a billing rate of $175.00 per hour is appropriate for the nature and complexity of the services rendered regarding this particular matter. The court orders Ms. Bornemann to pay $1828.75 to Mr. Bornemann's counsel by July 1, 1998.
Amended Motion for Contempt (#173)
The defendant seeks the court find the plaintiff in contempt of court for failure to notify the defendant of employment, as she has attained it since the October 4, 1996 hearing. There is no doubt that it was an explicit order of this court to provide such notice. The order was imposed on the parties, reciprocally. CT Page 7733 The court finds that the plaintiff knew of the court order: she was present when it was issued. She demonstrated no lack of knowledge of it. In her testimony regarding this motion, she alternatingly claimed compliance with the order requirements and excuse because of the pay arrangements of the employment.
The court finds that the plaintiff is in contempt of the October 4, 1996 order in each of the following instances:
1. She gave no notice of her initial employment with Westport that paid out $150 per week;
2. She gave no notice of the substantial change in the compensation arrangements with Westport; and
3. She gave no notice of her employment with Campbell Black and the specifics of that work.
This notice requirement was an ongoing, affirmative obligation of the plaintiff. She cannot rely on the fact that the defendant sought this information through discovery procedures. That was not his obligation and, in fact, has resulted in unnecessary fees and costs in procuring the information that he was entitled to as a result of the October 4, 1996 court order. Further, the relatively small amount of pay from Westport initially not a basis for non-disclosure. The court did not impose any minimum thresholds. Similarly, the compensation arrangement at Campbell Black is not an excuse for non-disclosures. The plaintiff's work there is, in a sense, similar to any commissioned salesperson waiting for the deal to close. She is employed. She failed to disclose.
Having found the plaintiff in contempt of court, the court must consider what is an adequate remedy. The defendant's counsel fees in this matter are inextricably wound up with the fees committed to time on the Amended Motion to Open (#174) and the Motion to Terminate say of Execution and to Reinstate Original Orders as to Nonmodifiable Term of Alimony (#172). Having heard the evidence on these matters, the court finds that substantially the same amounts of time would have been required to be committed to the preparation for each of these motions individually since, ultimately, they all deal with the same issue. The defendant's attorney fees including costs, as charged, are $8,166.72. This court has found that of that sum, $1,828.75 is attributable to the KCSI stock issue. Therefore, the defendant has been charged CT Page 7734 with $6,297.37 in attorney fees and costs over the employment non-disclosure issues.
The court has considered the reasonable ness of the rate charged by extrapolating from the total due and the hours expended. It is consistent with the New Haven legal community rates for family matters; the court has considered the complexity of the issue. The court has considered all statutory criteria for the award of counsel fees where there has been a finding of contempt. The plaintiff is ordered to pay the defendant counsel fees (including costs) in the amount of $6,000.00 within thirty days.
The defendant seeks further relief. Effectively, after considering the relief granted in regard to other motions subject of this memoranda, the court finds that no further relief is necessary.
Amended Motion to Open (#174)
The defendant seeks an order of the court opening the decision on October 4, 1996 which granted a stay of the judgment alimony order and imposed an order of alimony pending the appeal. The defendant claims that the plaintiff committed a fraud sufficiently severe that this court should open that order.
"`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.'" Alexander v. Church,53 Conn. 561, 562, 4 A. 103 (1886), quoting T. Cooley, Torts p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Gerard,196 Conn. 584, 587, 494 A.2d 1199 (1985); Miller v. Appleby,183 Conn. 51, 54-55, 438 A.2d 811 (1981). A marital judgment based upon a stipulation may be opened if the stipulation, and thus the judgment, was obtained by fraud. Kenworthy v. Kenworthy,180 Conn. 129, 131, 429 A.2d 837 (1980). "The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time." Billington v. Billington, 220 Conn. 212, 218,595 A.2d 1377 (1991). CT Page 7735
As recited above, the plaintiff had testified at length about her bleak employment prospects on October 4, 1996. This court has found that she was at work the following Monday for Mr. Orgel at Westport. The evidence further discloses that she was paid for work from Westport for a period of time dating back to September 30, 1996. The court having adjudged the plaintiff entirely not credible on the issue of her employment finds that she was working at Westport at least as of September 30, 1996. The evidence discloses and the court finds, that it was a very fluid employment arrangement. Mr. Orgel was paying the plaintiff for a modest amount of services in hopes of tying her up to work for him..
 Fraud by nondisclosure . . . involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assume to speak, under circumstances in which there is a duty to speak. A lack of full and fair disclosure of such facts must be accompanied by an intent or expectation that the other party will make or will continue in a mistake, in order to induct that party to act to her detriment. Jackson v. Jackson, 2 Conn. App. 179, 194, 478 A.2d 1026, cert. den'd, 194 Conn. 805, 478 A.2d 710 (1986).
The plaintiff's employment arrangement, however fluid it was, was not disclosed in any way at all by the plaintiff at the October 4, 1996 hearing. She did not even allude to it as a possibility. She induced the defendant to believe her testimony as it was presented to the court. The court orders were based upon a different employment situation for her than actually existed at the time. This was a significant part of the evidence at that hearing and pivotal to the issues that were before the court. Effectively that order increased the defendant's alimony order during the appeal from $400 per week provided for in the judgment to $575 per week. Further, the time limited (eighteen months) alimony in the judgment having been stayed is, therefore, presently preserved and has not yet commenced to run.
By the criteria of Kenworthy the court finds that the plaintiff committed fraud in both her financial affidavit and her testimony before the court on October 4, 1996. Pinder v. Pinder,42 Conn. App. 254, 263 (1996).
A judgment may be opened based upon fraud only if the following criteria have been met. "(1) There must have been no CT Page 7736 laches or unreasonable delay by the injured party after the fraud was discovered. . . . ([2]) There must be clear proof of the perjury or fraud. ([3]) There must be a substantial likelihood that the result of the new trial will be different." Id at p. 218. [Requirements renumbered and that former criteria which was overruled by decision is omitted.]
The court finds that there has been no unreasonable delay in the defendant's pursuit of the allegation of fraud regarding the October 4, 1996 hearing. The defendant did not become aware of the likelihood that the plaintiff had current employment until about December, 1996. He pursued an inquiry regarding this through counsel at that time. On March 5, 1997, the defendant filed a Motion for Contempt and on or about August 13, 1997, she filed a Motion to Open regarding these issues. The defendant, also filed a Motion to Open addressed to the issue (#169.01) on or about February 3, 1998. That motion had a hearing date assigned of February 17, 1998. In the interim, discovery occurred including Mr. Orgel's deposition. The defendant ultimately pursued this virtually identical motion dated March 16, 1998. Further, no waiver of the right to bring the claim can realistically be considered here. The delay was modest. Discovery continued on occasion throughout the period so that the plaintiff could not have been lulled into believing the defendant was no longer going to pursue the issue via one motion or another. The reason for the imposition of the laches/unreasonable delay requirement is to protect the other party from harm resulting from the delay. Such harm would be the inability to corral evidence because of the passage of time or change of position relying on a perceived waiver of a fraud claim. Neither was present here.
In Billington v. Billington, op. cit. at p. 215, the act of nondisclosure complained of was discovered in September or October, 1987. The Motion to Open the judgment based on a claim of fraud was filed in December, 1988, some fourteen or fifteen months I later. The Supreme Court did not disturb the lower court finding that there were no laches or unreasonable delay there. Similarly, this court finds that there was no laches or unreasonable delay here.
The court having already found that the proof of fraud in the plaintiff's perjury has been proven by clear and convincing evidence, must consider the last criteria: that there is a substantial likelihood that the result at a new hearing would be CT Page 7737 different. The court finds that there is such a substantial likelihood. The argument for the stay was premised on, among other things, the inability at that time for the plaintiff to do any significant job hunting and the inability for her in the job hunting she had done to find employment. She emphasized the fragility of her position because she was tied to the real estate and her son's schedule, emphasizing how little time the defendant was available to help out with the child. The evidence before this court suggests that none of this true. Further the 18 month window provided by the original judgment award of time limited alimony for gaining full and fruitful employment has been born out by the facts as they have unfolded. Had the court known that she was already on the road to toward full employment in her chosen field, there is a substantial likelihood that the Motion for Stay would not have been granted and the original alimony order would have been allowed to run.
By calculation, the defendant has been paying the increased award over the last 23 months as his appeal has been pending before the Supreme Court. The total amount of excess alimony awarded over $400 per week is, to date, $4025. Further, had no stay been in effect the alimony order would have ended after eighteen months. That total would have been $31,200 (18 months @ $400 per week). Assuming the defendant is current in his existing alimony obligation, he has paid $57,500.
The amended Motion to Open is granted. Counsel are required to appear on June 30 1998 at 2:00 P.M. fora status conference for the scheduling of a new hearing on the Motion for Stay. Depending on the outcome of that hearing, that court should then address the defendant's claims of overpayment and for repayment, as they may exist at the conclusion of orders from that hearing.
Motion to Terminate Stay of Execution and to Reinstate Original Ordersas to Nonmodifiable Term of Alimony (# 172)
In this motion, the defendant seeks an end to the stay of execution ordered on October 4, 1996 regarding the alimony ordered in the original judgment now on appeal. Further, the court is requested to reinstate the original orders of July 18, 1996 regarding alimony. Those orders were that the defendant was to pay the plaintiff the sum of $400.00 per week for a period of eighteen months.
Essentially, the defendant's argument is that since the CT Page 7738 plaintiff misrepresented to the court her employment situation of October 4, 1996, the actions regarding alimony taken by the court on that date should be undone and the parties placed back where they were as if the hearing had not been held.
It is up to the court which hears the plaintiff's Motion for Stay to determine anew whether a stay should be put in place regarding the alimony order as of October 4, 1996. If the Motion for Stay is not pursued, then since the Amended Motion to Open has been granted, there is currently no stay in effect, dating back to October 4, 1998. The trial court will determine anew whether the appeal has occasioned the need for a stay under the evidence presented to it. Tessitore v. Tessitore,31 Conn. App. 40, 623 A.2d 496 (1993). The defendant is, accordingly, entitled to pursue such relief as he may then be entitled to. Therefore, this Motion is denied.
Motion for Sanctions (#177)
The defendant seeks sanctions from the plaintiff for her failure to attend the scheduled March 16, 1998 hearing. Plaintiff claimed that she was unable to attend because she suffered that morning from gastrointestinal disruption. The defendant, disbelieving the plaintiff, drove out to Madison and observed the plaintiff's automobile at her place of employment. The parties' testimony differs on how long she spent at work. The plaintiff, having been found not credible on substantial issues before this court (see above), can not be credited with accuracy on the issue of her time at work. However, this does not address whether she was physically indisposed in the morning, as claimed by her. The court, based on the evidence before it cannot find by a preponderance of the evidence that she was not physically ill that morning. Therefore, the Motion for Sanctions (#177) is denied.
MUNRO, J.