[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO REOPEN JUDGMENT
On February 3, 1999 the defendant David Lillibridge filed a motion to modify/terminate child support. The defendant represents that DNA testing was ordered by Judge Dranginis on October 21, 1998, ten years subsequent to the date judgment was entered dissolving the marriage of the parties. DNA testing has been completed and the results show that the defendant is not the biological father of the minor child, Jaime L. Lillibridge born March 21, 1986.
The defendant contends that, based upon the DNA testing results the judgment should be modified with respect to the current child support order concerning Jaime only. By stipulation of the parties, the court is treating the above motion as a motion to reopen and modify judgment regarding child support based upon the defendant's claim of fraud concerning the issue of paternity of the minor child, Jaime Lynn Lillibridge.
By way of background, the parties were married on May 29, 1983. The first child issue of the marriage David Alan Lillibridge was born on September 19, 1983. The second child, Jaime Lynn Lillibridge was born on March 21, 1986. The parties' marriage was dissolved by decree on September 8, 1989 where the parties proceeded to judgment on an uncontested basis. The parties further filed an agreement and stipulation including CT Page 7288 provisions for the care, custody and support of the minor children, David Alan Lillibridge born September 17, 1983 and Jaime Lynn Lillibridge born March 24, 1986. Custody of both minor children was awarded to the wife subject to reasonable rights of visitation to the father within forty-eight hours advance notice. The judgment of the court further found that David Alan Lillibridge and Jaime Lynn Lillibridge were minor children born to the wife since the date of the marriage and were the lawful issue of said marriage.
Subsequent to the dissolution of marriage judgment, the defendant visited with the children, paid support and consistently treated both children as issue of the relationship with the plaintiff. In the fall of 1996 the defendant overheard the conversation of third parties wherein his ex-spouse was alleged to have made statements that he is paying child support for a child that is not his. On January 1997 the defendant filed a motion to reopen for a blood group test which was granted by Judge Dranginis on October 21, 1998.
The parties appeared before the trial court on April 23, 1999 wherein the defendant prosecuted his motion to reopen dated February 3, 1999. The defendant contends that the judgment should be reopened and child support terminated for the minor child (Jamie only) based on fraud. The defendant testified that he filed his previous motion on January 8, 1997 concerning blood tests because, "he wanted to see if he was the legal father according to the laws of the state of Connecticut." He further testified that his date of birth was December 19, 1966 and was sixteen years old when he married the plaintiff who was pregnant at the time of their marriage. He further indicated that David, a son whose paternity he does not challenge, was born to the parties on September 17, 1983. He testified that in as early as March of 1986 he was aware of his wife's extramarital affairs with another man. He and his wife discussed the issue of paternity of the minor child, Jaime Lynn, and her extramarital affairs after the birth of Jaime during an argument with his wife. In discussing the matter of the extramarital affair he asked if "protection" or birth control was used. His wife stated, "yes it was." He also confronted her male paramour and in response again to his inquiry whether protection was used the paramour responded, "I believed so." The husband further testified that during the marriage, his wife's extramarital affairs were discussed during various arguments between the parties. CT Page 7289
He testified at the time of the dissolution of the marriage that he wanted to believe that Jaime was his child and further he wanted to end the marriage as soon as possible. He confirmed that he and his wife had no further discussions as to the biological father of the minor child prior to the divorce other than those stated above. From the date of the divorce the defendant has supported both Jaime and David and that until the time he filed the motion for the blood grouping test, he was in contact with Jaime by way of visitation, birthday presents, Christmas gifts, etc. The defendant for a period of approximately eleven years has treated Jaime as his daughter. He had exercised his rights as a parent and has supported the child with child support arrearage findings as of record.
Prior to the time he filed his motion to reopen the defendant testified that he overheard conversations wherein his ex-wife was alleged to say that one of the children was not his. On 12/15/96 after hearing an advertisement for a paternity test, he purchased a mouth swab test from Dr. Alan Gelb of Life Code in Stamford, Connecticut. He determined, through saliva samples and laboratory testing, that he was not the biological father of the child. The court granted his motion to reopen judgment for purposes of DNA tests which were performed concluding that the minor child is not his biological issue.
The plaintiff ex-wife Alice Lillibridge testified at the present hearing that she believed Jaime to be the biological issue of the relationship with her husband. She further admitted that she advised her husband at the time of their initial conversation that her male friend used protection at the time of intercourse and that further she and her husband had no reason to dispute the paternity of the minor child. From July of 1985 through the date of the divorce September 8, 1989 she and her husband never discussed the issue of the paternity of the minor child Jaime Lillibridge. From 1986 through 1996 she had no reason to believe that Jaime Lynn was not issue of the marriage. The plaintiff further testified at the hearing that she does not dispute the results of the DNA testing wherein it was concluded that her ex-husband is not the biological father of the minor child.
The plaintiff also called her ex-stepmother, Marissa Therrien of Palm City, Florida to testify at the continuation of the hearing on May 28, 1999. She testified that her relationship with CT Page 7290 the plaintiff was "not good" around the time before and after the birth of Jaime. She further stated that she and the defendant, "formed a pact" i.e. confided in each other concerning the conduct of the plaintiff. She stated that she told the defendant to obtain a paternity test both prior to and subsequent to the birth of the child. She also stated that the defendant stated to her that "he didn't believe Jaime was his." She also confirmed that she had many conversations with him during this period. She further described that she even told the defendant that Jaime did not look like him, and that in response to her statement, the defendant cried. In rebuttal, the defendant testified he did not recall these conversations.
The defendant contends that the court should reopen the judgment for purposes of terminating the child support obligation on the basis of fraud. The defendant claims that although he admitted to the paternity of the minor child at the time of the dissolution of marriage September 8, 1989 and was aware of the extramarital affair of his wife as early as March of 1986, the four-month rule to reopening of judgment should not apply on the basis of fraud. Fraud consists in deception, practice in order to induce another to part with property or surrender some legal right, in which accomplishes the end designed. Alexander v.Church, 53 Conn. 561 (1886). The elements of a fraud action are: (1) a false misrepresentation was made as a statement of fact; (2) the statement wasn't true and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Girard, 196 Conn. 584, 587 (1985), Miller v.Appleby, 183 Conn. 51, 54-55 (1981). A marital judgment based upon a stipulation may be opened if the stipulation and thus the judgment was obtained by fraud. Kenworthy v. Kenworthy,180 Conn. 129, 131 (1980). The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time.
In granting relief from a marital judgment secured by fraud the Supreme Court of Connecticut has imposed four limitations on the granting of a request for relief: (1) there must have been no latches or unreasonable delay by the injured party after the fraud was discovered; (2) there must have been diligence in the original action, that is diligence in trying to discover and expose the fraud; (3) there must be clear proof of perjury or fraud; and (4) there must be a substantial likelihood that the CT Page 7291 result of the new trial will be different. Varley v. Varley,180 Conn. 1, 4 (1980), Billington v. Billington, 220 Conn. 212, 218
(1991)
The trial court concludes that the judgment should not be reopened for the purpose of terminating child support. The defendant has failed to meet his burden of proof as to the elements of fraud. He has failed to prove that there was a false statement to any material fact i.e. any material fact to the issue of extramarital sex resulting in the conception of the child Jaime. The defendant by his own testimony, knew that his wife had an extramarital affair which by the laws of nature, could have resulted in the conception of a child. The plaintiff, testified that she admitted the affair to him and he confirmed it with her paramour. The stepmother testified that she told the defendant to have a paternity test performed after the birth of the child. She further told him that the child was not his child both before and after the birth.
The court further concludes that the testimony of the plaintiff and her ex-stepmother is credible. The trier of fact is the sole arbiter as to the credibility of witnesses. Smith v.Smith, 185 Conn. 491, 493 (1981); Beede v. Beede, 186 Conn. 191,194-5 (1982). Furthermore, the defendant couched his testimony when confronted with damaging cross-examination that he "did not recall" the conversations with the plaintiff's step-mother concerning the need for paternity testing. The court further finds that the defendant knew that (1) his wife was having an affair; (2) someone other than he could be the father (based upon statements he made to the stepmother and reaction to the fact the child did not resemble him); (3) paternity testing was available after the birth of the child; (4) he raised Jaime as his daughter prior to the divorce; (5) he admitted that Jaime was his child at the time of the divorce whether he believed it or not; (6) he supported the child, visited with her and held her out to the world as his child from her birth until 1997 when he filed the motion for the blood grouping testing, approximately 11 years.
Based upon the above law and facts found by the court, the defendant's motion to reopen judgment to terminate child support dated February 3, 1999 is denied.
Parenthetically the defendant argues in his brief (although not at trial) that the court should reopen the judgment and terminate child support on the alternate grounds of equity. These CT Page 7292 grounds were not briefed by opposing parties. While not obligated to do, based upon the stipulation of the parties that case should be decided on the basis of fraud, the court further denies the defendant's claim that the judgment should be reopened and child support terminated on the basis of equity. The defendant is estopped from raising the claim based upon the authority of W. v.W., SC 15956, (1999) and cased cited therein.
James J. Devine Superior Court Judge